453 So.2d 232 (1984)
AUDUBON INSURANCE COMPANY
v.
Edward FARR and Allstate Insurance Company.
No. 84-C-0247.
Supreme Court of Louisiana.
June 25, 1984.
*233 Michael K. Springmann, Dillon & Cambre, New Orleans, for plaintiff-respondent.
James L. Donovan, Jr., Donovan & Lawler, Metairie, for applicant-defendant.
WATSON, Justice.
Can a subrogee recover the amount paid its insured from the tortfeasor's insurer, despite a compromise subsequent to the subrogation between the damaged party and the tortfeasor's insurer?
A residence at 600-602 Louisa Street, New Orleans, was struck by a hit and run driver, Edward Farr, around June 1, 1978. There were two repair estimates, one for $5,260 and one for $5,350. Audubon Insurance Company, the homeowner's insurer of Donna M. Paul, paid her $4,412 for the damages. She executed a proof of loss for Audubon showing the "whole loss and damage" to be $4,512, less a $100 deductible. After giving Audubon a subrogation receipt for its payment, Paul accepted a $4,000 settlement from Farr's insurer, Allstate Insurance Company. Allstate's check had a notation "in payment of property damage of 6-1-78" but contained no other release language. Audubon's draft was paid on August 18, 1978, and Allstate's draft was paid on August 21, 1978. Audubon did not receive any notice of coverage by Allstate until March of 1979, and Allstate was unaware of Audubon's subrogation rights when it settled with Paul.
Audubon obtained a trial court judgment against Allstate and Farr for $4,412 and defendants Farr and Allstate were awarded a third party judgment against Paul for $4,000. The court of appeal affirmed, Audubon Ins. Co. v. Farr, 443 So.2d 733 (La.App. 4 Cir.1983) and a writ was granted to review the judgment. 446 So.2d 306 (La., 1984).
The court of appeal decided that: Audubon's subrogation rights vested prior to Allstate's payment; since Audubon was ignorant of the identity of the tortfeasor and his insurer at the time of its payment, Audubon was entitled to judgment on the subrogation claim. The court of appeal relied on American Bankers Insurance Co. of Fla. v. Costa, 107 So.2d 76 (La.App. Orl.1958), disagreed with Pennsylvania Fire Insurance Company v. Harrison, 94 So.2d 92 (La.App. 1 Cir.1957) and distinguished Voss v. Mike & Tony's Steak House, 230 So.2d 470 (La.App. 1 Cir.1969). Costa stated that the insured's release of the tortfeasor, even if valid, did not release the insured's subrogee. Harrison decided *234 that an insured's recovery from a tortfeasor of additional damages exceeding the actual loss paid by his insurer made the insured a trustee for the insurer as to the excess. Voss followed Harrison, holding that an insured who collected twice for the same item of damages kept the balance in trust for his insurer which had previously reimbursed the loss.
Was Audubon entitled to a judgment against the tortfeasor and Allstate, even though Allstate had already paid the approximate amount of the damage to Audubon's insured? In other words, as between the two insurance companies, which is going to have the burden of trying to recoup from Paul that portion which represents a double recovery by her?[1] Although Allstate's insured was the tortfeasor, the problem was caused by Audubon's insured, who breached the subrogation agreement with Audubon, thereby enriching herself to the detriment of her insurer.
Despite the absence of a specific release, there is no question that an accord and satisfaction took place between Paul and Allstate when she negotiated Allstate's draft. There was a disputed claim, a tender of a certain amount in settlement of that claim and an acceptance. Henriques v. Vaccaro, 220 La. 216, 56 So.2d 236 (1951). LSA-C.C. art. 3071, in pertinent part, defines a compromise as an agreement for preventing a lawsuit by which parties adjust their differences in writing. The only formal essential for a compromise is a writing. Antoine v. Smith, 40 La. Ann. 560, 4 So. 321 (1888). The check here recites that the insured is Edward Farr and the claimant Donna Paul; and it was issued "in payment of property damage of 6-1-78" in the amount of $4,000. It was signed by an agent of Allstate Insurance Company and endorsed by Donna Paul. It is clearly a written compromise of Paul's claim against Allstate. By endorsing and negotiating Allstate's draft, Paul compromised her claim against that company and its insured. Frazier v. Louisiana Central Lumber Company, et al, 144 La. 599, 80 So. 890 (1919). There is no indication of error, fraud, or violence which would prevent Paul from being bound by the compromise. LSA-C.C. art. 3079. Compare Wise v. Prescott, 244 La. 157, 151 So.2d 356 (1963).
In any event, the transaction between Paul and Allstate cannot be opposed by Audubon, an interested party not directly bound by that transaction. LSA-C.C. art. 3077.[2] A compromise cannot be collaterally attacked. Oglesby v. Attrill, 105 U.S. 605, 26 L.Ed. 1186 (1882); Russ v. Union Oil Co., 113 La. 196, 36 So. 937 (1904). The compromise between Allstate and Paul is not subject to collateral attack by Audubon Insurance Company.
The next question is the effect of the compromise on Audubon's suit against Farr and Allstate.
In the subrogation receipt Audubon received from Paul, Paul agreed not to settle with or release anyone responsible for her loss without Audubon's consent.[3] *235 Under Louisiana law, a subrogated insurer has the same right as its insured to a direct action against liability insurers of third parties. Home Ins. Co. v. Highway Ins. Underwriters, 222 La. 540, 62 So.2d 828 (1952). However, if Audubon's insured had discharged Allstate and Farr before the payment by Audubon, Paul would have had no rights to which Audubon could be subrogated. Pace v. Cage, 419 So.2d 443 (La., 1982).
Paul violated the terms of the subrogation agreement by settling with Allstate without the consent of Audubon. Audubon was aggrieved by its insured. Harrison, supra, correctly held that Audubon's remedy is against that insured who holds the excess recovery as trustee for Audubon. The insured, rather than a stranger to the contract of insurance, is responsible to the insurer for breach of the contract. Audubon's recourse is against Paul, not Allstate and Farr.[4]
The compromise settlement by Allstate and Farr with Paul "without knowledge or notice that the latter had assigned its claim" to Audubon bars this suit by Audubon. Jackson, Etc. v. Shreveport Producing & Ref. Corp., 6 La.App. 216 at 218 (1927).[5] Allstate had no notice of Audubon's subrogation rights and should not be penalized for its good faith settlement with Paul.
American Banker's Insurance Co. of Fla. v. Costa, supra, is disapproved.
For the foregoing reasons, the judgment of the court of appeal is reversed. Plaintiff's claim against Edward Farr and Allstate Insurance Company is dismissed, as well as the latter's third party claims against Paul.
REVERSED.
MARCUS, J., concurs.
DENNIS, J., concurs with reasons assigned by DIXON, C.J.
DIXON, C.J., concurs and assigns reasons.
CALOGERO, J., dissents and assigns reasons.
BLANCHE, J., dissents for reasons assigned by CALOGERO, J.
LEMMON, J., dissents for reasons assigned by Justice CALOGERO.
DIXON, Chief Justice (concurring).
I respectfully concur in the reasoning used by the majority; however, the result is more appropriately mandated by C.C. 2644 which provides:
"If previous to notice having been given of the transfer to the debtor, either by the transferrer or by the transferree, the debtor should have made payment to the transferrer, the debtor is discharged of the debt."
*236 In this case, Paul transferred her rights against Farr to Audubon in exchange for $4412. She gave no notice to Allstate. Allstate's subsequent payment was therefore prior to any notice of the assignment, and its debt to Paul and/or Audubon was thereby discharged.
CALOGERO, Justice, dissenting.
I dissent from the dismissal of Audubon's claim against Farr and Allstate, for the following reasons.
The accident giving rise to this litigation, where Farr drove his automobile into Ms. Paul's home, occurred on June 1, or 2, 1978. Both Audubon, Ms. Paul's homeowner's insurer, and Allstate, Farr's automobile liability insurer, quickly and diligently commenced settlement negotiations with Ms. Paul. However, neither insurer knew of the existence or the actions of the other, and Ms. Paul informed neither that she was in communication with the other. Thereafter, on July 5, 1978, Audubon issued a draft to Ms. Paul for the agreed upon property damages she sustained, less the $100.00 deductible, in the amount of $4,412.00. That draft was not paid through the bank until August 18, 1978. In the interim, on July 20, 1978, Allstate, also in good faith, issued a draft to Ms. Paul for the same property damages, in the amount of $4,000.00. Allstate's draft was paid through the bank on August 21, 1978.[1] It was stipulated at trial, by counsel for all parties, that Allstate did not obtain a release from Ms. Paul.[2]
Allstate did not receive a notice of subrogation from Audubon until March 23, 1979. By that time, Allstate had long since paid Ms. Paul the $4,000.00 for property damages by the issuance of the July 20th draft, which was paid on August 21, 1978. Nonetheless, Audubon insisted that Allstate and Farr owed it reimbursement for the $4,412.00 it had paid Ms. Paul, and eventually filed the instant suit for that amount.
La.C.C. art. 2644 provides:
If, previous to notice having been given of the transfer to the debtor, either by the transferrer or by the transferree, the debtor should have made payment to the transferrer, the debtor is discharged of the debt.
At the time Allstate, in good faith, issued its draft to Ms. Paul for the property damage she sustained, it had not been notified of the subrogation agreement between Ms. Paul and Audubon. In fact, Allstate was not notified of that agreement until some nine months later, in March of 1979. Since Allstate made payment to Ms. Paul in the amount of $4,000.00 prior to notification of the assignment of the claim to Audubon, under La.C.C. art. 2644, its debt for Ms. Paul's property damage was to that extent discharged by this payment.
However, because Allstate and Farr did not obtain a release from Ms. Paul when it made the $4,000.00 payment, they cannot be totally exonerated from the debt by that payment. La.C.C. art. 2644 only provides for a discharge of the debt to the extent payment was made. Accordingly, Audubon's claim against Allstate and Farr for the remaining $412.00 it paid to Ms. Paul (over and above the $4,000.00 for which Allstate is discharged) should be maintained. Accordingly, I dissent from the majority opinion dismissing Audubon's suit against Allstate and Farr.
NOTES
[1] As to the deductible portion of Paul's claim, there was, of course, no duplication. She was entitled to obtain this portion of the damages in preference to her insurer. Southern Farm Bureau Cas. Ins. v. Sonnier, 406 So.2d 178 (La., 1981). "[T]he claim of the partially subrogated insurer is subordinate to the insured's claim." 43 La.L.Rev. at 725. LSA-C.C. art. 2162.
[2] Transaction and compromise are synonymous terms in the Civil Code. Hill v. Hill, 173 La. 574, 138 So. 107 (1931).
[3] The Audubon policy states:

"Subrogation. This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company."
The subrogation receipt, which is stamped August 13, 1978, provides:
"In consideration of and to the extent of said payment the undersigned hereby subrogates said Insurance Company, to all of the rights, claims and interest which the undersigned may have against any person or corporation liable for the loss mentioned above, and authorizes the said Insurance Company to sue, compromise or settle in the undersigned's name or otherwise all such claims and to execute and sign releases and acquittances and endorse checks or drafts given in settlement of such claims in the name of the undersigned, with the same force and effect as if the undersigned executed or endorsed them.
"Warranted no settlement has been made by the undersigned with any person or corporation against whom a claim may lie, and no release has been given to anyone responsible for the loss, and that no such settlement will be made nor release given by the undersigned without the written consent of the said Insurance Company and the undersigned covenants and agrees to cooperate fully with said Insurance Company in the prosecution of such claims, and to procure and furnish all papers and documents necessary in such proceedings and to attend court and testify if the Insurance Company deems such to be necessary but it is understood the undersigned is to be saved harmless from costs in such proceedings."
[4] See Continental Ins. Co. v. Weinstein, 37 Tenn.App. 596, 267 S.W.2d 521 (1953); American Automobile Ins. Co. v. Clark, 122 Kan. 445, 252 P. 215 (1927); Home Ins. Co. v. Bernstein, 172 Misc. 763, 16 N.Y.S.2d 45 (1939); Allstate Ins. Co. v. Dye, 113 Ohio App. 90, 17 Ohio Ops.2d 85, 85 Ohio L.Abs. 17, 170 N.E.2d 862 (1960); Universal Ins. Co. v. Millside Farms, Inc., 119 N.J.L. 534, 197 A. 648 (1938); Illinois Auto Ins. Exch. v. Braun, 280 Pa. 550, 124 A. 691, 36 A.L.R. 1262 (1924); Melick v. Stanley, 174 N.J.Super. 271, 416 A.2d 415 (1980), affirmed 181 N.J.Super. 128, 436 A.2d 954 (1981).
[5] Allstate and Farr were released by the compromise from all claims for property damage to the Paul residence on June 1, 1978. Audubon's contention that it should recover at least the $412 differential is without merit.
[1] In all likelihood, the two drafts were presented for payment simultaneously, but the Allstate draft took an extra day to clear through the bank, thus not marked paid until Monday, August 21, 1978, while the Audubon draft was marked paid on Friday, August 18, 1978.
[2] The majority concludes that the draft issued to Ms. Paul, containing only the notation "in payment of property damage of 6-1-78," and Ms. Paul's endorsement on that draft fullfill the requirements of La.C.C. art. 3071, that a compromise be in writing to be valid. I disagree with this conclusion for two reasons: mainly, because it was stipulated at trial that Allstate did not obtain a release from Ms. Paul; but secondly, because in the absence of any language indicating the payment was made in "full" settlement or "complete" settlement, etc. there is no intent to settle on the part of either party evidenced by this document. See Felder v. Georgia Pacific Corp., et al, 405 So.2d 521 (La.1981).