582 So.2d 250 (1991)
PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY and Asbestos Workers Local No. 53
v.
William TURNER, and his Wife, Aileen Turner.
No. CA 90 0122.
Court of Appeal of Louisiana, First Circuit.
April 10, 1991.
*251 James Kirk Piccione, Lafayette, for petitioners-appellant.
William E. Scott, III, Baton Rouge, for movers.
John L. Oliver, Francis A. Oliver, III, Sunset, for defendants.
Before LOTTINGER, SHORTESS, and CARTER, JJ.
LOTTINGER, Judge.
This is an appeal by Provident Life and Accident Insurance Company (Provident), and Asbestos Workers Local No. 53 (Asbestos), from a judgment of the trial court sustaining a peremptory exception raising the objection of prescription filed on behalf of defendants, McNeil Real Estate Fund (McNeil) and National Union Fire Insurance Company (National Union).

FACTS AND PROCEDURAL HISTORY
This matter originally arose out of an accident in which Aileen Turner was injured on March 31, 1984. Mr. and Mrs. Turner filed suit against Wal-Mart, Inc., McNeil, and National Union, on February 25, 1985. During the pendency of the Turner suit, Provident paid Mrs. Turner's medical bills incurred as a result of the accident, pursuant to a health insurance policy under which she was insured. Provident thereby became subrogated to the rights of the Turners against the three defendants in the Turner suit to the extent of the medical bills it paid.
*252 Provident notified the Turners' attorney and National Union during the pendency of the suit that it was paying the Turners' medical bills and requested reimbursement. Provident included paid medical bills in the amount of $5,652.84 along with this initial request for reimbursement, and advised that it would update these bills when notified that settlement was near. However, Provident did not intervene in the Turners' suit to assert its claim, and in March of 1988, the Turners settled with McNeil and National Union for $235,000.00 without prior notification to Provident. Subsequent to the settlement, the Turners paid Provident $5,652.84; and on April 4, 1988, voluntarily dismissed the suit against McNeil and National Union with prejudice.
Provident then notified the Turners that it had paid an additional $31,442.41 in medical bills and requested reimbursement. The Turners refused, and on January 19, 1989, Provident filed the instant suit against the Turners for reimbursement of this amount. On June 2, 1989, Provident amended its suit to name Wal-Mart,[1] McNeil, and National Union as defendants. Provident alleged in this supplemental petition that National Union acted in bad faith by settling with the Turners without notice to Provident, since National Union knew of Provident's claim for reimbursement for the medical bills it had paid. On September 14, 1989, Provident again amended its suit to include an allegation that all defendants were solidarily liable to it for the amount prayed for.
McNeil and National Union then filed a peremptory exception raising the objection of prescription. The trial court granted this exception and dismissed McNeil and National Union with prejudice. The trial court adopted the movers "Memorandum in Support of Exception of Prescription" as its written reasons for judgment.[2] Provident has perfected the instant appeal and asserts a single assignment of error, that the trial court erred in sustaining defendant's peremptory exception raising the objection of prescription.
Provident contends the suit filed by the Turners against McNeil and National Union interrupted prescription as to Provident's claim for reimbursement of the medical bills paid on behalf of Mrs. Turner. Provident alleges it had one year from the dismissal of the Turners' suit to assert its claim for reimbursement.
Provident next alleges that in light of the fact that all of the parties to the settlement in the Turner suit had actual knowledge of Provident's claim for reimbursement, but nevertheless settled without including Provident, they all became solidary obligors with respect to Provident's claim for reimbursement. It follows that since Provident timely (within one year from the dismissal of the Turner suit) sued one of these solidary obligors (the Turners) prescription was interrupted as to the remaining solidary obligors pursuant to La.Civ.Code art. 1799. Therefore, Provident claims the addition of McNeil and National Union to the instant suit was not barred by prescription.
McNeil and National Union dispute all of the above, but contend that even granting the same, Provident's suit against them is barred by prescription based on La.Civ. Code art. 3463, which provides in pertinent part: "Interruption is considered never to have occurred if the plaintiff abandons, voluntarily dismisses, or fails to prosecute the suit at the trial." McNeil and National Union contend that since the plaintiff (the Turners) voluntarily dismissed the suit against them prior to the filing of the instant suit, the interruption of prescription that resulted from the Turners' suit is considered never to have occurred.

WAS PRESCRIPTION INTERRUPTED AS TO PROVIDENT BY THE TURNERS' SUIT?
Provident's first proposition, that the Turners' suit interrupted prescription as to *253 its claim for reimbursement, and that prescription began to run anew from the dismissal of that suit, is supported by Louviere v. Shell Oil Co., 440 So.2d 93 (La.1983). In that case the plaintiffs were injured on an offshore oil platform. Within one year from the accident which caused the injuries, the plaintiff's workers' compensation carrier, who had paid compensation benefits to the plaintiffs, filed suit against various tortfeasors in federal district court for reimbursement of the benefits paid. The plaintiffs then filed suit against these same tortfeasors more than one year from the accident which caused their injuries.
The federal district court dismissed the claims of the plaintiffs as being untimely, holding that although prescription was interrupted by the filing of suit by the compensation carrier, that it immediately started to run again. Since both plaintiffs filed suit more than one year from the filing of the compensation carrier's suit, both suits were barred by prescription, notwithstanding that they were both filed during the pendency of the compensation carrier's suit. The plaintiffs appealed to the United States Court of Appeals for the Fifth Circuit, which via certified question, asked the Louisiana Supreme Court to instruct it as to the effect of the interruption of prescription occasioned by the filing of the compensation carrier's suit.
The Louisiana Supreme Court, in Louviere, responded that prescription was indeed interrupted by the filing of the compensation carrier's suit, because "there is only one principal cause of action, and the compensation insurer is asserting part of the employee's cause of action, because the insurer has paid part of the employee's damages and is entitled to recover to the extent of those payments as partial subrogee." Louviere, 440 So.2d at 95. The court further stated "when several parties share a single cause of action (as through partial subrogation), suit by one interrupts prescription as to all." 440 So.2d at 96. The Louviere court went on to hold that once prescription is interrupted by the filing of a suit, interruption continues during the pendency of the suit, and begins to run anew from the last day of the interruption.
McNeil and National Union assert prescription was not interrupted as to Provident's claim for reimbursement because a partially subrogated insurer such as Provident is a joint or several obligee rather than a solidary obligee, and therefore prescription runs independently on each obligation. Appellees cite Southern Farm Bureau Casualty Insurance Company v. Sonnier, 406 So.2d 178 (La.1981), as authority for this proposition.
In Sonnier, the Sonniers' son died in a car-train collision. Southern Farm, the Sonniers' auto insurer, paid $2758.40 for funeral expenses pursuant to a medical and funeral expense clause in its policy. The Sonniers then sued Missouri-Pacific Railroad for the wrongful death of their son. This suit resulted in a judgment in favor of the Sonniers in the amount of $103,160.00. This judgment included an award of $3,160.00 for funeral expenses. Missouri-Pacific appealed.
Southern Farm first became aware of this suit six days after the above judgment was rendered. Southern Farm then contacted the Sonniers' attorney to collect the amount it had paid for the funeral, relying on the subrogation clause in its insurance policy. Before either agreeing or declining to pay Southern Farm's claim, the Sonniers settled their suit with Missouri-Pacific for $90,000.00. The Sonniers' attorney notified Southern Farm that they would not be reimbursed for the funeral expenses the day after the settlement was entered into. Southern Farm then filed suit against the Sonniers to recover the funeral expenses it paid, asserting that the Sonniers had violated the subrogation clause of the policy. Both the trial court and the court of appeal ruled in favor of Southern Farm, deciding a subrogated insurer is entitled to be paid in preference to its insured out of the recovery from a tortfeasor.
The supreme court reversed, holding the subrogor is entitled to collect the full amount of his damages from the tortfeasor before the subrogee can recoup that part of the subrogor's damages that he contributed. Accordingly, Sonnier stands *254 for the proposition that only after the subrogor has recovered the full amount of his damages from the tortfeasor can the subrogee recoup, from the subrogor, the amount it paid. Sonnier did not deal with whether the subrogee could recover what it paid to the subrogor from the tortfeasor, but implied that the subrogee could indeed recover from the tortfeasor even if the subrogor settles for less than the full amount of its damages.[3]
Although Sonnier did characterize the relationship between the partial subrogee and the subrogor as joint or several, as asserted by appellees, it did not deal at all with the issue of whether a suit by the subrogor interrupts prescription as to the subrogee's claim against the tortfeasor. Therefore, the clear expression in Louviere on that issue is controlling, and Provident is correct in its assertion that prescription as to its subrogated claim for reimbursement of Mrs. Turner's medical bills was interrupted during the pendency of the Turner suit and began to run anew upon its dismissal.

ARE THE TURNERS AND MCNEIL/NATIONAL UNION SOLIDARY OBLIGORS WITH RESPECT TO PROVIDENT'S CLAIM?
We now turn to Provident's assertion that subsequent to the settlement of the Turner suit, the Turners, McNeil, and National Union all became solidary obligors with respect to Provident's claim for reimbursement, thus allowing Provident's timely suit against the Turners to interrupt prescription as to the other solidary obligors pursuant to La.Civ.Code arts. 3462, 3503, and 1799.
We first note that the burden of proving an exception of prescription is on the party asserting it. Pearson v. Hartford Accident & Indemnity Company, 281 So.2d 724 (La.1973); Levron v. Bonin, 448 So.2d 211 (La.App. 1st Cir.1984). We further note that prescriptive statutes are strictly construed, and where there are two permissible constructions, the one which favors maintaining the action should be adopted. Foster v. Breaux, 263 La. 1112, 270 So.2d 526 (1972).
Where a well pleaded petition alleges facts that, if taken as true, lead to solidary liability between a defendant raising an exception of prescription and a timely sued defendant, the allegedly untimely petition relates back to the timely filed petition, and the plaintiff is entitled to have his case heard as against the exceptor on the merits. Pearson, 281 So.2d at 726; Levron, 448 So.2d at 213; Fontenot v. O'Brien, 361 So.2d 298 (La.App. 1st Cir. 1978); Patin v. Stockstill, 315 So.2d 868 (La.App. 1st Cir.1975). If during the course of the proceedings it turns out that under the facts actually proven, there is no solidary liability, then the plea should be maintained at that time. Pearson, 281 So.2d at 726.
In the instant case Provident has alleged the Turners, through their attorney, and National Union, through its claims adjuster, had actual knowledge of Provident's subrogation claim, but nevertheless settled the underlying tort suit without notice to Provident and have subsequently refused to reimburse it for the medical bills paid on behalf of the Turners. If these facts, once proven, will indeed lead to solidary liability on the part of the Turners with McNeil and National Union, then the plea of prescription was improvidently granted by the trial court.
La.Civ.Code art. 1794 provides that: "[a]n obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee." Thus, solidary obligors are persons that "are bound to perform the same obligation, where payment by any one exonerates the rest and where the debtor may compel full performance from any one of such obligors.... This is so even though the obligations of the obligors arise from separate *255 acts or by different reasons of law." Pearson, 281 So.2d at 725; see also, Fertitta v. Allstate Insurance Company, 462 So.2d 159, 163 (La.1985).
Provident contends that based on the holdings of State National Fire Insurance Co. v. Sykes, 527 So.2d 589 (La.App. 3rd Cir.1988), and McDaniel v. Hearn, 158 So.2d 348 (La.App. 2nd Cir.1963), it has stated a cause of action against McNeil and National Union, who, based on these two cases, remained liable to Provident for the full amount of its subrogated claim after the settlement with the Turners, under the well pleaded facts of Provident's petition. Provident further contends that based on Audubon Insurance Company v. Farr, 453 So.2d 232 (La.1984), and Sonnier, the Turners are also liable for the amount of the medical bills paid on their behalf by Provident after the settlement of their claims against McNeil and National Union. Provident contends that since both the Turners and McNeil/National Union were obliged to perform the same obligation, i.e., to reimburse it for the medical bills it paid, and since payment by any one would exonerate the others, and any of them could be compelled to render full performance, they were all solidary obligors.
In Sykes, a log truck, owned by Sykes, crashed into the residence of Mr. and Mrs. Ussery. State National, the Ussery's homeowners insurer, subsequently paid the Usserys $5,200.00 to repair the damage to their home, and thereby became legally subrogated to the Ussery's claim up to that amount. State National notified Sykes and his insurer, South Central, of this payment, and that it intended to proceed with its subrogation claim against them.
The Usserys then filed suit against Sykes and South Central for the damage caused by Sykes' truck. State National did not intervene in that suit to collect the payment it made to the Usserys. Prior to going to trial, the Usserys settled with and released both Sykes and South Central for $65,500.00. The settlement agreement entered into by the Usserys and Sykes/South Central contained a provision whereby the Usserys agreed to indemnify and hold the released parties harmless from any claims made through subrogation, by any parties.
Thereafter, State National filed suit against Sykes and South Central to enforce its subrogation rights for the payment it made to the Usserys. The defendants filed a motion for summary judgment asking for dismissal based on the release executed by the Usserys. State National amended its petition to add the Usserys as alternative defendants, and prayed for judgment against them in the event that Sykes and South Central were found not to be liable for the subrogated claim. The trial court granted the motion for summary judgment filed by Sykes and South Central, and dismissed them with prejudice, citing Audubon. State National appealed from this judgment.
The Third Circuit, in Sykes, after analyzing both Audubon and Sonnier, concluded that where the plaintiff/subrogor settles with the tortfeasor and his insurer for the full amount of the damages, and when the tortfeasor and his insurer are aware of the subrogee's claim for reimbursement, the subrogee can recover what it paid to the plaintiff/subrogor from the tortfeasor and his insurer.[4]
The Sykes court held that where the subrogor settles with the tortfeasor, the subrogee can still recover its share of the claim from the tortfeasor. Sykes included the following quote from Sonnier in support of this proposition:
Accordingly, we conclude that, upon Southern Farm's payment to its insured, the debt of the railroad was divided between it and Sonnier, causing them to become either several or joint obligees, and that the subsequent actions of Sonnier in exercising his right to collect his part of the credit had no prejudicial effect upon the insurance company's right. (emphasis added).
Sykes, 527 So.2d at 591 (quoting Sonnier, 406 So.2d at 181).
*256 The Sykes court further held that under Audubon, the subrogee is precluded from asserting its claim against the tortfeasor and his insurer after a settlement between them and the plaintiff/subrogor, only when the tortfeasor and his insurer were not aware of the subrogee's claim for reimbursement at the time of the settlement. Therefore, based on the analysis and holding of Sykes, with which we fully agree, Provident did have a cause of action against National Union subsequent to the settlement of the Turner suit.[5]
In Audubon, cited by Provident for the proposition that the Turners were also liable for the medical bills paid by Provident after the settlement, a residence owned by Mrs. Paul was struck by a vehicle driven by Mr. Farr. Paul then executed a proof of loss statement showing that the total amount of the damage was $4,512.00, pursuant to which Audubon, as Paul's homeowner's insurer, paid Paul $4,412.00.[6] Audubon became conventionally subrogated to Paul's claim pursuant to this payment. Thereafter, Paul accepted a settlement from Allstate, Farr's insurer, in the amount of $4,000.00, and released Farr and Allstate from any further liability. Allstate was unaware of Audubon's subrogation rights when it settled with Paul.
Audubon sued Allstate and Farr to recover the amount it paid to Paul, and was awarded the full amount of this payment against Allstate and Farr by the trial court. The court of appeal affirmed. The supreme court, in reversing, first recognized that an insurer such as Audubon, who was subrogated to the entire claim of its insured, had the same right to proceed against the tortfeasor and his insurer as its insured had.[7] However, the supreme court held since Allstate and Farr did not have notice of Audubon's subrogation rights, Audubon's remedy was against Paul, not Allstate and Farr. The Audubon court held when an insured recovers more than his total damages from the tortfeasor or his insurer, he holds the excess amount in trust for his insurer as subrogee.
Thus, under the holding of Audubon, if the Turners recovered the total amount of their damages from McNeil and National Union, including the amount that had already been paid in the form of medical bills by Provident, they held the excess recovery, i.e. the amount of the medical bills paid by Provident which represented a double recovery, in trust for Provident. Utilizing the analysis employed in Sonnier leads to the same result. If the Turners recovered the full amount of their damages from McNeil and National Union, then according to Sonnier, Provident can recoup the amount of its subrogation claim from the Turners. Here, just as in Sykes, there is no evidence that the Turners were only partially compensated by the settlement with McNeil/National Union, and therefore, pursuant to Audubon and Sonnier, the Turners are also liable to Provident for the medical bills paid on Mrs. Turner's behalf.
Accordingly, under the facts as plead by Provident, together with the applicable provisions of law concerning solidary liability, the Turners and National Union are solidary obligors with respect to Provident's claim for reimbursement.

LA.CIV.CODE ART. 3463
Finally, McNeil and National Union assert that notwithstanding the interruption of prescription and the solidary obligation owed to Provident by the parties to the settlement as set forth above, that since the Turners voluntarily dismissed the suit against them prior to the filing of the instant suit, the interruption of prescription that resulted from the Turners' suit is considered never to have occurred pursuant to *257 La.Civ.Code art. 3463. A literal reading of the last sentence of La.Civ.Code art. 3463 supports the appellee's contention given the facts of this case. However, the supreme court has twice held this article does not negate the interruption of prescription when the plaintiff voluntarily dismisses his case after a general appearance by the defendant.[8]
In Hebert v. Cournoyer Oldsmobile-Cadillac GMC, Inc., 419 So.2d 878 (La. 1982), the supreme court held that the provision of former La.Civ.Code art. 3519 dealing with the effect of the plaintiff's voluntary dismissal of his suit on that suit's interruption of prescription, (now the last sentence of art. 3463), applied only to a voluntary dismissal prior to a general appearance by the defendants. This interpretation of Article 3463 was reaffirmed in Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987). In that case the supreme court again held that the last sentence of Article 3463 does not apply after the defendant has made a general appearance.
The reason given by the court in both Hebert and Roger for this interpretation of the article, that once a defendant has made a general appearance the trial court is vested with the discretion to dismiss the case with prejudice,[9] does not apply to the facts of the instant case. This is so because the plaintiff in the instant case, Provident, was not a party to the suit that was voluntarily dismissed, and thus res judicata does not bar its suit, and because the prior suit was indeed dismissed with prejudice.
However, we are nonetheless bound by the clear holding of Hebert and Roger, that the article does not apply to negate the interruption of prescription where the defendant has made a general appearance, for two reasons. First, in Roger the defendant that was advocating a literal reading of the article was not a party defendant to the plaintiff's prior suit that was voluntarily dismissed. See, Roger, 513 So.2d at 1135 (Marcus, J. dissenting). Thus, the stated reason for the supreme court's holding would seem to be inapplicable under the facts in Roger as well as in the instant case. Secondly, it is well settled that prescriptive statutes are strictly construed, and where there are two permissible constructions, the one which favors maintaining the action should be adopted. Foster, 270 So.2d at 529.
Thus, we cannot ignore the clear statement in both Hebert and Roger that the last sentence of the article does not apply once the defendant has made a general appearance. Since McNeil and National Union each made a general appearance in the Turner suit prior to the voluntary dismissal of that suit, La.Civ.Code art. 3463 did not negate the interruption of prescription occasioned by the filing of the Turners' suit against McNeil and National Union.
Therefore, since the Turners and National Union are solidary obligors under the facts as plead by Provident, and the Turners were timely sued by Provident, the peremptory exception raising the objection of prescription was improvidently granted insofar as National Union is concerned.
Accordingly, for the above and foregoing reasons, the judgment of the trial court sustaining the peremptory exception raising the objection of prescription as to National Union Fire Insurance Company is hereby reversed, and this case is remanded to the trial court for disposition not inconsistent with this opinion. Costs of this *258 appeal are assessed against National Union Fire Insurance Company.
REVERSED AND REMANDED.
CARTER, J., concurs with reasons.
CARTER, Judge, concurring.
The writer reluctantly concurs in the result reached by the majority. I cannot say that Louviere v. Shell Oil Co., 440 So.2d 93 (La.1983), (which involved a worker's compensation carrier's suit against tortfeasors) does not require the result reached by the majority. However, I believe that the rationale of Southern Farm Bureau Casualty Insurance Company v. Sonnier, 406 So.2d 178 (La.1981) clearly provides that the relationship between the partial subrogee and the subrogor is joint or several as opposed to solidary.
If not constrained by Louviere, I would draw an analogy between the relationship of the parties in the case sub judice with that of a tortfeasor and a UM carrier as set forth in Sharp v. Daigre, 555 So.2d 1361 (La.1990), wherein the supreme court stated:
A UM carrier has no independent right to recover from a tortfeasor. After paying a UM claim, a carrier may be conventionally subrogated to the rights of its insured against the tortfeasor. However, the law favors compromise. Niemann v. Travelers Insurance Co., 368 So.2d 1003 (La.1979). Without a full release, an underinsured motorist and his liability carrier would never agree to compromise.
Thus, the UM carrier's interest in subrogation must be subordinated to the recovery of damages by the injured person. Niemann; McKenzie, Louisiana Uninsured Motorist CoverageAfter Twenty Years, 43 La.L.Rev. 691 (1983). If the insured releases the tortfeasor in the course of good faith compromise and settlement, the UM carrier has no recourse. Niemann; Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981); Pace v. Cage, 419 So.2d 443 (La.1982); Bosch v. Cummings, 520 So.2d 721 (La. 1988).
Harvey Sharp's release of Daigre and USAA for full policy limits was accomplished pursuant to a bona fide compromise. Since UM carriers have only a qualified right of subrogation, Aetna and Acceptance cannot complain that their rights have been abridged.
555 So.2d at 1363-1364.
I believe that, just as in Sharp, if a health and accident insurer has not asserted its claim by intervention or otherwise and the tortfeasor is released by the injured party in the course of good faith compromise and settlement, the health and accident insurer should have no recourse. Otherwise, how is a tortfeasor and its insurer ever going to be released and discharged? Without a full and valid release, a tortfeasor and its insurer could never agree to compromise, and the law favors compromise.
I respectfully submit that our high court will make a full-scale study of the issues involved in this case and resolve the competing theories that make for uncertainty in this area of the jurisprudence.
NOTES
[1] Wal-Mart was later voluntarily dismissed by Provident.
[2] The memorandum adopted by the trial court as its written reasons for judgment is composed almost entirely of argument. Only one statute (Civ.Code art. 3492), and no prior jurisprudence, is cited therein.
[3] See the quote from Sonnier in the section of this opinion dealing with the solidary nature of the obligation owed to Provident by the Turners and McNeil/National Union below.
[4] Since we are satisfied that Hearn stands for the same proposition as Sykes, but was rendered prior to Audubon and Sonnier, we will not discuss its holding further.
[5] Provident has not stated a cause of action against McNeil, however, since Provident has not alleged that McNeil was aware of its claim for reimbursement. See, Audubon, 453 So.2d 232.
[6] This amount represented the total damages less a $100.00 deductible.
[7] The Audubon court noted that if the subrogor had discharged the tortfeasor and his insurer prior to being paid by the subrogee, the subrogor would have no remaining rights to which the subrogee could be subrogated to.
[8] The case of Howes v. Doucet, 531 So.2d 1151 (La.App. 4th Cir.1988), cited by appellees, is clearly distinguishable from the instant case as it relates to article 3463. In that case the Fourth Circuit held that the article negated the interruption of prescription where the plaintiff failed to prosecute his suit at trial, and the suit was subsequently dismissed involuntarily pursuant to La.C.C.P. art. 1672(A). See also, Camaille v. Shell Oil Co., 562 So.2d 28 (La.App. 5th Cir.), writ denied, 565 So.2d 944 (La. 1990); and Erickson v. City of New Orleans, 552 So.2d 501 (La. App. 4th Cir.1989). In the instant case, just as in Hebert and Roger, a settlement was reached prior to trial and the suit was voluntarily dismissed.
[9] Thereby precluding another suit by the same plaintiff, against the same defendant, on the same cause of action, based on the grounds of res judicata.