663 So.2d 433 (1995)
Earl ADAMS, Jr. and Donald J. Quezerque
v.
Albert DUPREE and Allstate Insurance Company.
No. 94-CA-2353.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1995.
Writ Denied January 26, 1996.
*434 Vincent J. Glorioso, Jr., Helen H. Babin, New Orleans, for Appellant (Earl Adams, Jr.).
Patrick A. Talley, Jr., Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, for Appellee (The Kansas City Southern Railway Company).
Before KLEES, CIACCO, LOBRANO, JONES and LANDRIEU, JJ.
LOBRANO, Judge.
Plaintiff, Earl Adams, Jr., appeals the trial court judgment sustaining the peremptory exception of prescription filed by defendant, Kansas City Southern Railroad (KCS). The procedural history leading to the appeal of this case is as follows.
On May 6, 1991 plaintiff and his guest passenger, Donald Quezerque, while driving on L & A Road in Metairie, La., were struck by another vehicle operated by Albert Dupree as he exited a driveway on property owned by KCS. As a result, plaintiff and Quezerque timely sued Dupree and his insurer, Allstate Insurance Company, for the injuries they received in the accident. In October of 1992, Allstate settled Adams' claim for $25,000.00. Adams executed a full release in favor of Allstate and its insured, Dupree. There was no reservation of rights in either the release agreement or the motion to dismiss jointly filed by plaintiff and Allstate. The trial court dismissed, with prejudice, Adams' suit on November 16, 1992. On May 10, 1993 Quezerque settled with Allstate and Dupree for $24,000.00. The terms of that settlement provided that Allstate would be reimbursed "dollar for dollar" for the sum of $4,000.00 out of any proceeds to be received by Quezerque in a suit to be filed against KCS.[1]
On May 14, 1993, plaintiff and Quezerque filed a first supplemental and amending petition naming KCS as a defendant asserting that it was responsible for their damages because of strict liability and negligence.[2] On June 3, 1993 plaintiff and Allstate executed another release which contained a "reservation of rights" clause. On July 12, 1993 KCS filed an exception of prescription.
Based on the second release executed by plaintiff and Allstate, another "corrected" motion to dismiss, which contained a reservation of rights, was filed on October 15, 1993. The trial court signed that order of dismissal *435 on November 17, 1993.[3] In addition, plaintiff filed, on November 16, 1993, a separate suit to annul the first judgment of dismissal, i.e. the one signed on November 16, 1992. Basically, plaintiff asserted that the judgment of dismissal, the joint motion to dismiss and the release executed at that time were erroneous and were the result of a mutual mistake. A consent judgment annulling the November 16, 1992 order of dismissal was signed on March 14, 1994. That consent judgment did not affect the validity of the second order of dismissal, i.e. the one signed on November 17, 1993.
On June 24, 1994 the trial court granted KCS' exception of prescription and dismissed plaintiff's suit. This appeal followed.
Plaintiff argues that the initial suit against Dupree interrupted prescription as to KCS since they are solidary obligors. Plaintiff asserts that the interruption is continuing as long as that initial suit was pending, and that since the initial dismissal was erroneous, the amended petition filed May 14, 1993 against KCS was timely. KCS counters with the argument that the initial dismissal was, and is, vailid and since it was a voluntary dismissal by plaintiff, the second sentence of Civil Code Article 3463 is applicable. That sentence basically provides that if plaintiff voluntarily dismisses his suit "interruption [of prescription] is considered never to have occurred." In rebuttal to this argument plaintiff asserts that, even if we find the first dismissal valid, it was not a voluntary dismissal as contemplated by Article 3463. Plaintiff cites Hebert v. Cournoyer Oldsmobile-Cadillac GMC, Inc., 419 So.2d 878 (La.1982), Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987), and Provident Life and Accident Insurance Company v. Turner, 582 So.2d 250 (La.App. 1st Cir.1991) in support.
Without deciding the validity or effect of the judgment annuling the first order of dismissal, and assuming that that first judgment effectively dismissed plaintiff's lawsuit as of that date, the issue narrows to an interpretation of the term "voluntary dismissal" as used in Civil Code Article 3463, and whether the November 16, 1992, judgment was a voluntary dismissal.
Initially, we observe that prescriptive statutes are strictly construed, and where there are two permissible constructions, that which maintains the action should be adopted. Foster v. Breaux, 263 La. 1112, 270 So.2d 526 (1972); Provident Life and Accident Insurance Company, supra. It is well settled that suit against one joint tortfeasor will interrupt prescription as to other joint tortfeasors. La.C.C. art. 2324(C). The same rule applies with respect to solidary obligors. La.C.C. arts. 1799, 3503. It is equally clear that if, after trial, it is determined that there is no in solido obligation, prescription may be successfully asserted by the untimely sued defendant who is cast in judgment. See, Gioustover v. Progressive American Insurance Co., 561 So.2d 961 (La. App. 4th Cir.1990).
Prescription on a tort claim accrues in one year. La.C.C. art. 3492. If prescription is interrupted (as opposed to suspended), "the time that has run is not counted [and] [p]rescription commences to run anew from the last day of interruption." La.C.C. art. 3466. If prescription is interrupted by the filing of suit, the interruption is continuing as long as the suit is pending. La.C.C. art. 3463; see also, Louviere v. Shell Oil Co., 440 So.2d 93 (La.1983). However, "[i]nterruption is considered to have never occurred if the plaintiff abandons, voluntarily dismisses, or fails to prosecute the suit at the trial." La. C.C. art. 3463 (emphasis added) The crux of this case revolves around the meaning of "voluntarily dismisses."
When plaintiff settled his claim against Dupree and Allstate, he and Allstate filed a joint motion to dismiss which was signed by the trial judge on November 16, 1992, dismissing plaintiff's claims with prejudice. Plaintiff's subsequent amended petition against KCS was filed May 14, 1993. Thus, if the dismissal order signed on November 16, 1992 is not a "voluntary dismissal" within *436 the meaning of Article 3463, then plaintiff's claim against KCS is timely because prescription began anew on November 17, 1992. La.C.C. art. 3466. Although KCS makes the argument that the absence of a reservation of rights in both the release and judgment of dismissal is pertinent to the issue before us, we disagree. As part of the general revisions of the Civil Code by Act 331 of 1984, the Louisiana legislature repealed former Civil Code article 2203 which required a reservation of rights to proceed against a solidary obligor. Current Article 1803 provides that the sole effect of a compromise with one obligor is that it benefits the others "in the amount of the portion of the obligor." See, Weber v. Charity Hospital of Louisiana, 475 So.2d 1047 (La.1985), at ftn. 4. Thus, the absence of a reservation by plaintiff in his release of Dupree and Allstate is not pertinent to the issue of whether prescription began anew.
The second sentence of article 3463 has its origin in article 3519 of the 1870 Civil Code, before its revision by Acts 1982, No. 187. Article 3519 provided: "If the plaintiff in this case, after having made his demand, abandons, voluntarily dismisses, or fails to prosecute it at the trial, the interruption is considered as never having happened." The project of 1825 was the same, except that the phrase "voluntarily dismisses" was not included. That phrase was not added until the 1960 revisions to the Code of Civil Procedure.[4]
Hebert v. Cournoyer Oldsmobile-Cadillac GMC, supra, presented the first opportunity for our Supreme Court to consider the meaning of "voluntarily dismisses" within the context of article 3463. There, the plaintiff sued a manufacturer and seller of a product in redhibition. On the day of trial, and without objection by the defendants, the plaintiff dismissed his suit without prejudice.[5] Two weeks later the plaintiff refiled the same suit against the same defendants, whereupon he was promptly met with an exception of prescription. Faced with defendant's argument that since plaintiff "voluntarily dismissed" his suit and therefore "the interruption is considered as never happened," the court concluded as follows:
"We accordingly conclude that Article 3519's provision (regarding the effect of the plaintiff's voluntary dismissal of a demand on that demand's interruption of prescription) applies only to a voluntary dismissal prior to a general appearance by the defendants. Only before the defendants' general appearance does the plaintiff have the unqualified right of voluntary dismissal (and only then can plaintiff use dismissal as a procedural tool for such objectionable practices as forum shopping.)" at pp. 880, 881.
KCS, in brief, argues that Hebert is factually distinguishable from the instant case and is thus not applicable. It suggests that the dismissal in Hebert was without prejudice and with the consent of the same defendants that were sued again, whereas the dismissal in the instant case was with prejudice, and obviously without the consent of KCS. We find that KCS' distinction is one that makes no difference. The only effect of a dismissal with prejudice, as opposed to one without prejudice, is the finality of the judgment for res judicata purposes as between the parties to the lawsuit. See, La. Code Civ.Pro. art. 1673. It has no effect as to those not parties to the litigation and it has no bearing on whether the dismissal is "voluntary" within the meaning of Civil Code article 3463. Furthermore, the consent of an unsued solidary obligor to plaintiff's dismissal cannot be a prerequisite to holding that the dismissal is not voluntary for purposes of Article 3463.
To the contrary, we find significant the Hebert court's reliance on the unqualified right of a plaintiff to dismiss prior to the appearance by a defendant. That interpretation is consistent with the original phraseology *437 of article 3519, the source provision, prior to its amendment in 1960. It provided that interruption is considered as having never happened if the plaintiff "abandons or discontinues" his action. That terminology suggests that plaintiff, alone, had the sole and unfettered discretion to discontinue the proceedings. In that situation, the law considered the interruptive effect of the suit as having never occurred. However, where a defendant has made a general appearance, the plaintiff no longer has the sole discretion to dismiss his lawsuit. La.C.Civ.Pro. art. 1671.
Relying on its holding in Hebert, our Supreme Court once again, in Roger v. Estate of Moulton, supra, held that a dismissal, subsequent to the general appearance of defendants, was not a voluntary dismissal within the meaning of the second sentence of article 3463. The facts of that case are very similar to the instant case. There, plaintiff initially sued several tortfeasors for the injuries he received in an auto accident. After settling with those defendants, and dismissing his suit against them, he filed a separate suit against his UM carrier. That suit, on its face, had prescribed. However, relying on article 3463, plaintiff asserted that prescription had been interrupted by his initial suit against the solidarily bound joint tortfeasors. The UM carrier countered with the argument that plaintiff's initial suit had been "voluntarily dismissed" and therefore the interruption is considered as having never occurred. The court rejected the idea that there was a voluntary dismissal and, after citing Hebert, simply concluded:
"In this instance, prior to dismissal, all original defendants had made general appearances by filing a pleading or other entry into the case. La.Code Civ.P. art. 7. Accordingly, the last sentence of art. 3463 does not apply." at p. 1133.
Our brethren of the First Circuit followed Hebert and Roger in Provident Life and Accident Insurance Company v. Turner, supra. Although questioning the rationale of those cases as they applied to the Provident Life facts, the court nonetheless concluded that "the last sentence of the Article [3463] does not apply once the defendant has made a general appearance." at p. 257. See also, Touchstone v. Land and Marine Applicators, Inc., 628 F.Supp. 1202 (E.D.La.1980).
We also make the same conclusion. The jurisprudence interpretative of the second sentence of article 3463 makes clear that a dismissal is not considered voluntary within the meaning of that article if entered after the general appearance by a defendant. Accordingly we hold that because plaintiff's suit against KCS was instituted within one year of the November 16, 1992 dismissal, and because that dismissal was entered after a general appearance by Dupree and Allstate it was not "voluntary".
Plaintiff's suit against KCS has not prescribed.[6] The judgment of the trial court is reversed and the matter is remanded for further proceedings.
REVERSED AND REMANDED.
CIACCIO and LANDRIEU, JJ., concur with reasons.
CIACCIO and LANDRIEU, Judges concurring with reasons.
We concur for the purpose of remanding the matter to the trial court for further proceedings. The majority is correct in its holding that under current jurisprudence plaintiff's dismissal with prejudice of its claims against Dupre and Allstate was not a voluntary dismissal and prescription had not tolled at the time Kansas City Southern (KCS) filed its exception. By the time, however, that the trial court ruled on KCS's exception, it would appear prescription had run.
Plaintiff's suit against Dupree and Allstate was dismissed with prejudice on November 16, 1992, at which time prescription began to run anew. Five months later on May 14, 1993, plaintiff attempted to sue KCS by amending his initial petition to add KCS as a defendant. Three months later on July 12, 1993, KCS filed an exception of prescription and eleven months later on June 24, 1994, *438 the trial court granted that exception. It is not clear, therefore, whether the trial court held that the exception was valid as of the date it was filed or whether it was valid as of the date that he ruled. If the former, the majority is correct. If the latter, we respectively believe the majority is incorrect.
If prescription began to run anew on November 16, 1992, plaintiff had one year from that date to commence an action against KCS. It attempted to do so on May 14, 1993, and July 22, 1993, by filing amending petitions naming KCS as a defendant. Plaintiff's suit, however, had been dismissed and he was no longer a party to the remaining litigation. See Hayes v. Muller, 183 So.2d 310 (La.1966); Riddle v. Simmons, 626 So.2d 811 (La. 2nd Cir.1993); Herberg v. Dixon, 531 So.2d 532 (La. 5th Cir.1988); Ward v. Firemen's Ins. Co. of Newark, New Jersey, 501 So.2d 266 (La. 1st Cir.1986). Plaintiff attempted to correct the record by having the first judgment of dismissal with prejudice declared a nullity. Even assuming that the action of nullity was valid, which KCS denies, the judgment of dismissal was not nullified until March 15, 1994, four months after November 17, 1993, when prescription had run in favor of KCS.
NOTES
[1] This is commonly referred to as a "Mary Carter" agreement.
[2] The factual basis for liability was the assertion that KCS had obscured the view of cars pulling out of the driveway by stacking debris near the entrance.
[3] For whatever reason, the second judgment of dismissal was signed by a different judge that the first dismissal.
[4] In 1960 the Code of Practice of 1870 was abolished and the current Code of Civil Procedure was adopted.
[5] The reason given for the plaintiff's procedural maneuver was that his expert would not be allowed to testify because of the failure to disclose the expert prior to trial. The court would not grant a continuance, therefore plaintiff moved to dismiss.
[6] Of course, if after trial, there is no solidary liability between KCS and Dupree, there was no interruption of prescription, and KCS's exception can be reurged.