WELCH, J.
*909 The plaintiff, Louisiana Farm Bureau Casualty Insurance Company ("Farm Bureau"), appeals from a judgment of the trial court granting summary judgment in favor of the defendants-Shelter Mutual Insurance Company ("Shelter") and its insureds, Ashley Burkett and David Scott Burkett ("Burketts")-that dismissed all of Farm Bureau's claims, with prejudice. For the reasons that follow, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
This matter arises out of an automobile accident that occurred on December 13, 2015, when a 2013 Mercedes Benz GLK 350 operated by Katherine Burkett and insured by Shelter, collided with a 2014 Chevrolet Craze operated by Jessica Hall and insured by Farm Bureau.[1] As a result of the accident, Ms. Hall sustained injuries and sought medical treatment. Pursuant to the terms of Ms. Hall's auto policy, Farm Bureau paid Ms. Hall a $5,000.00 medical payment and thereupon, became subrogated to Ms. Hall's claim for up to $5,000.00. See Egros v. Pempton, 606 So.2d 780, 784 (La. 1992). The policy provides: "If we make any payment under this policy and the person to or for whom payment is made has a right to recover damages from another, we shall be subrogated to that right. However, our right to recover is subordinate to the insured's right to be fully compensated."
On February 17, 2016, Farm Bureau notified Shelter of the $5,000.00 medical payment and its status as Ms. Hall's subrogee and requested reimbursement. Farm Bureau again notified Shelter of its subrogated interest, requesting reimbursement on July 11, 2016, and October 18, 2016.
After Farm Bureau notified Shelter of its subrogation claim, Ms. Hall instituted a personal injury action against Ashley Burkett-individually and on behalf of her minor daughter, Katherine Burkett-and Shelter on May 19, 2016, seeking damages for her injuries allegedly sustained as a result of the automobile accident.[2] Farm Bureau did not intervene in that suit to collect the $5,000.00 medical payment it paid to Ms. Hall.
Thereafter, on December 12, 2016, Farm Bureau filed a petition for subrogation against Shelter and the Burketts, seeking recovery of the $5,000.00 medical payment it paid on behalf of its insured, Ms. Hall. Farm Bureau claimed that it was "subrogated, both conventionally and legally, to the rights of its insureds to recover medical payment made to or on behalf of its insured."
After Farm Bureau had notified Shelter of its subrogation claim and instituted the subrogation suit, Ms. Hall entered into a receipt and release agreement with Shelter for the sum of $53,500.00 on March 20, 2017, in full settlement of her personal injury claims. The language of that agreement stated that the amount was intended to cover any and all known damages (including property damage), physical injuries, medical payments, medical expenses, *910 and claims of any type. The agreement also contained the following language:
Appearer further agrees to indemnify, hold harmless, and defend the released parties against and from all further claims, judgments, costs, expenses, and losses (including attorney's fees) by reason of or that may be made or asserted by her, or by anyone else on her behalf, because of any loss or expenses suffered as a result of the aforementioned incident. Such claims specifically include, but are not limited to, those by way of lien, indemnity, contribution, subrogation right, and/or assignment, asserted or claimed by any third party on account of benefits or services that have been or may be provided to or for Appearer as a result of the alleged incident described above, or otherwise. It is the intention of Appearer to release and hold harmless the released parties from all liens, encumbrances, debts, or obligations which are now or may be hereafter filed or asserted in connection with any expenses incurred by or on behalf of Appearer. Appearer hereby represents that she will defend and hold harmless the released parties from any such liens or interventions which have been or may be asserted by any person or entity.
Following settlement, Shelter and the Burketts filed a motion for summary judgment in the subrogation suit instituted by Farm Bureau, arguing that Ms. Hall's receipt and release agreement with Shelter released the defendants from any and all liability for Ms. Hall's personal injury claims, including medical payments and medical expenses. Farm Bureau opposed the motion, to which the defendants filed a reply. Following a hearing, the trial court granted summary judgment in favor of Shelter and the Burketts, dismissing all of Farm Bureau's claims, with prejudice, and signed a judgment in accordance therewith on December 28, 2017. Farm Bureau now appeals.
LAW AND DISCUSSION
Farm Bureau argues that the trial court erred by granting summary judgment in favor of Shelter and the Burketts after ruling that the receipt and release agreement executed by Ms. Hall released the defendants' obligations to Farm Bureau, despite the fact that the defendants had notice of Farm Bureau's subrogated interest well before the settlement with Ms. Hall.
A summary judgment is reviewed on appeal de novo , with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. , whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3) ; Turner v. Rabalais, 2017-0741 (La. App. 1 Cir. 12/21/17), 240 So.3d 251, 255, writ denied, 2018-0123 (La. 3/9/18), 237 So.3d 1193.
The burden of proof to show that no material factual issues exist is on the mover. However, if the mover will not bear the burden of proof at trial, the mover is not required to negate all essential elements of the adverse party's claim. Rather, the mover must point out to the trial court that there is an absence of factual support for one or more elements essential to the adverse party's claim. Thereafter, the burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C. P. art. 966(D)(1). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can only be seen in light of the substantive law applicable to the case.
*911 Pumphrey v. Harris, 2012-0405 (La. App. 1 Cir. 11/2/12), 111 So.3d 86, 89.
Under the principle of subrogation, the insurer stands in the shoes of the insured and acquires the right to assert the actions and rights of the plaintiff. A. Copeland Enterprises, Inc. v. Slidell Mem'l Hosp., 94-2011 (La. 6/30/95), 657 So.2d 1292, 1298. The insurance policy in this case clearly states that State Farm is subrogated to the extent of the medical payments made to its insured. See Doucet v. Gayden, 2007-183 (La. App. 5 Cir. 10/16/07), 971 So.2d 382, 384. Under Louisiana law, a subrogated insurer has the same right as its insured to a direct action against liability insurers of third parties. See Home Ins. Co. v. Highway Ins. Underwriters, 222 La. 540, 62 So.2d 828 (1952). Farm Bureau had no obligation to intervene in Ms. Hall's personal injury claim. See Polk Chevrolet Co. v. Salario, 132 So.2d 115, 119 (La. App. 1 Cir. 1961).
In their motion for summary judgment, the defendants rely primarily on the Louisiana Supreme Court's holding in Audubon Ins. Co. v. Farr, 453 So.2d 232 (La. 1984) as support for their position that Ms. Hall's settlement deprived Farm Bureau of its subrogation claim. The question before the supreme court in Farr was whether a subrogee (Audubon Insurance Company) could recover the amount it paid to its insured (Donna M. Paul) from the tortfeasor's insurer (Allstate Insurance Company), despite a settlement subsequent to the subrogation. Farr, 453 So.2d at 233. In Farr, Audubon's insured settled with the defendants (the tortfeasor and his insurer) without Audubon's knowledge and before Audubon had placed the defendants on notice of its subrogated interest. The supreme court ruled that Audubon had no recourse against the defendants, holding that a settlement by the tortfeasor's insurer (Allstate Insurance Company) and the Audubon's insured "without knowledge or notice that the latter had assigned its claim" to Audubon barred suit by Audubon. Because Allstate had no notice of Audubon's subrogation rights, the supreme court held that Allstate could not be penalized for its good faith settlement with the Audubon's insured, Ms. Paul. Id. at 235. It was clear that the timing of notice was a critical factor as to whether a subrogee maintains its subrogation rights against the tortfeasors:
In this case, [Audubon's insured] transferred her rights against [the tortfeasor] to Audubon in exchange for $4412. She gave no notice to Allstate. Allstate's subsequent payment was therefore prior to any notice of the assignment, and its debt to [Audubon's insured] and/or Audubon was thereby discharged.
Id. at 236 (Dixon, C.J., concurring).
In addition to Farr, other courts have recognized that the timing of notice is paramount in determining whether a settlement agreement made by a tortfeasor and its insurer with the subrogee's insured discharges a subrogee's subrogated interest. See State Farm Mut. Auto. Ins. Co. v. Manuel, 608 So.2d 1065 (La. App. 3 Cir. 1992) (subrogee's insured and tortfeasor's insurer were solidary obligors with respect to the subrogee's reimbursement claim, since the tortfeasor's insurer had knowledge of the subrogation claim prior to its settlement with subrogee's insured); see also Provident Life and Acc. Ins. Co. v. Turner, 582 So.2d 250, 256 (La. App. 1 Cir. 1991) (The injured plaintiff settled her tort claim with tortfeasor's liability insurer (National Union) without notice to her health insurer (Provident) after both had received notice of Provident's subrogated interest for her medical expenses. Provident sued for reimbursement of medical expenses, and the court held that if the *912 plaintiff and National Union had actual knowledge of Provident's subrogation claim, but nevertheless settled the underlying tort claim without notice to Provident and subsequently refused to reimburse it, the plaintiff and National Union would be solidary obligors with respect to Provident's claim for reimbursement.); Serpas v. Ridley, 556 So.2d 134 (La. App. 5 Cir. 1990) (where the victim settled with his uninsured motorist insurer and gave it a subrogation claim before the victim settled with the tortfeasor, the subrogation was valid as against the tortfeasor); State Nat. Fire Ins. Co. v. Sykes, 527 So.2d 589 (La. App. 3 Cir. 1988) (a subrogee is precluded from asserting its claim against the tortfeasor and his insurer after a settlement between them and the plaintiff/subrogor, only when the tortfeasor and his insurer were not aware of the subrogee's claim for reimbursement at the time of the settlement); Southern Farm Bureau Cas. Ins. Co. v. Sonnier, 406 So.2d 178, 181 (La. 1981) (a partial subrogee has an independent substantive right to proceed against the debtor; subsequent acts of the original creditor (such as a settlement agreement) have no prejudicial effect upon the partial subrogee's right to collect against its debtor.).
In the present matter, it is undisputed that the defendants were on notice of Farm Bureau's subrogated interest well before the settlement with Ms. Hall. That notice prevented the defendants from relying upon the subsequent settlement with Ms. Hall as a release of its liability to Farm Bureau. Farm Bureau, has an independent, substantive right to proceed against Shelter and the Burketts. Subsequent acts of the original creditor, i.e. , Ms. Hall and her execution of the receipt and release agreement with Shelter, had no prejudicial effect upon Farm Bureau's right to collect against the defendants. Furthermore, solidarity exists between the defendants and Ms. Hall as it relates to Farm Bureau's subrogated claim. See, e.g., Manuel, 608 So.2d at 1067. Thus, as solidary obligors, Farm Bureau may seek recovery from either the defendants or its insured, Ms. Hall. See La. C.C. art. 1795. Based on the foregoing, the trial court erred in granting summary judgment in favor of Shelter and the Burketts. Accordingly, we reverse.
DECREE
The trial court's December 28, 2017 judgment is reversed. We remand for further proceedings consistent with this opinion. All costs of this appeal are assessed to the defendants/appellees, David Scott Burkett, Ashley Burkett, and Shelter Mutual Insurance Company.
REVERSED AND REMANDED.

The Farm Bureau policy, A T23168, had liability limits of $100,000.00 per person, $300,000.00 per accident.

See Jessica Hall v. Ashley Burkett and Shelter Mutual Insurance Company, Docket Number 2016-1418, Division C, 21st Judicial District Court, Parish of Tangipahoa, State of Louisiana.