THERIOT, J.
Flora and Richard Turner (collectively known as "Appellants") appeal the judgment of the Nineteenth Judicial District Court granting the motions for summary judgment filed by Robert David Rabalais, M.D. ("Dr. Rabalais") and East Baton Rouge Medical Center, L.L.C. d/b/a Ochsner Medical Center ("Ochsner"), and denying Appellants' motion for summary judgment. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On June 28, 2013, Appellants filed a medical malpractice suit against Dr. Rabalais *253 and ABC Insurance Company.[1] Dr. Rabalais is a practicing physician in Baton Rouge, Louisiana; ABC Insurance Company is his insurer. In their petition, Appellants alleged that on July 24, 2012, Mr. Turner sought treatment from Dr. Rabalais because of pain in his left knee.[2] According to Appellants, x-rays were ordered prior to Mr. Turner's visit with Dr. Rabalais. Appellants alleged that proper care was not used to transfer Mr. Turner from his mobile scooter to a walker when Mr. Turner was being x-rayed. Appellants further alleged that the walker given to Mr. Turner was too short, and that the combination of these actions resulted in Mr. Turner falling. According to Appellants, Dr. Rabalais reviewed the x-rays, which were taken after Mr. Turner's fall, found that there was nothing broken and/or that Mr. Turner was not severely injured, and released Mr. Turner.
Following his release, Mr. Turner returned home and stayed in his reclining chair for five days, but was in pain the entire time. Mr. Turner was brought to the emergency room at Ochsner, where additional x-rays confirmed that he had two broken bones in his leg. As a result of the broken bones, Mr. Turner was admitted to the hospital for a few days and then released. At some point prior to release, Mr. Turner's right leg was placed in either a cast or a splint. Appellants alleged that his right leg was placed in a hard cast, while Ochsner contended that Mr. Turner's right leg was actually placed in a removable long leg splint.
Appellants alleged that, after several days, Mr. Turner was brought to the Bone & Joint Clinic in Baton Rouge and that Mr. Turner vomited twice during the ride. Appellants further alleged that when Mr. Turner's cast (or splint) was removed, it was discovered that Mr. Turner had three sores on his right foot and left leg, his skin had turned black, and he experienced blood clots behind his knee.
Following this discovery, Appellants alleged that Mr. Turner was next seen by Dr. Lawrence Messina, who placed Mr. Turner in a soft cast and confirmed that his bones were broken. According to Appellants, Mr. Turner was subsequently seen by Dr. Cravens, a vascular surgeon, who opined that Mr. Turner was in danger of "losing his left foot, left leg, and possibly his life." A filter was placed to deal with the clot in Mr. Turner's leg and surgery was later performed to harvest his veins in an attempt to revascularize his foot.
After his surgery, Mr. Turner underwent hyperbaric treatment at the Advanced Wound Clinic at Baton Rouge General Hospital. Mr. Turner also sought treatment at Our Lady of the Lake Regional Medical Center Wound Care Center. Appellants alleged that Mr. Turner now suffers from osteomyelitis and peripheral neuropathy. Appellants further alleged that Mr. Turner subsequently had his right leg amputated above the knee.
As a result, Appellants submit that Dr. Rabalais breached his standard of care by failing to properly diagnose and treat Mr. Turner. According to Appellants, this alleged breach led to Mr. Turner suffering severe and debilitating damages, needing *254 medical care and additional surgeries, and being permanently disabled and disfigured. Further, Appellants alleged that Mrs. Turner had suffered loss of consortium damages as a result of Mr. Turner's injuries.
Mr. Turner's case proceeded to a medical review panel. On September 2, 2015, the panel unanimously found that the evidence in this case did not support the conclusion that the defendants failed to meet the applicable standard of care as charged in the complaint. The panel specifically stated:
The patient was appropriately x-rayed, observed, treated, and the appropriate immobilizer was provided. He was appropriately discharged with proper followup instructions. He presented to the [emergency room] the next day following this discharge. He was admitted to the hospital and an orthopedic consult was provided. He was discharged and referred to see his orthopedist at the Bone and Joint Clinic of Baton Rouge for further care and treatment.
The panel is satisfied with the care provided by the hospital and its staff.
In November 2015, Appellants filed an amended petition, adding Ochsner as a defendant.[3] In this amended petition, Appellants alleged that, since his amputation, Mr. Turner was now confined to a wheelchair, unable to perform daily activities he once could perform, and had to re-model his home and purchase new vehicles equipped to deal with someone in his debilitated state. Appellants also submitted that the casting on Mr. Turner's leg was placed negligently by Ochsner employees. Further, Appellants acknowledged that Mr. Turner's case had proceeded to a medical review panel and that the panel had found that there was no negligence, but argued that the panel was incorrect.
On October 17, 2016, Ochsner filed a motion for summary judgment. Ochsner argued that Appellants had failed to produce required expert opinion evidence supporting their claims. Additionally, Ochsner argued that Mr. Turner failed to produce sufficient evidence to support the conclusion that Ochsner had failed to meet the applicable standard of care. Specifically, Ochsner alleged that a removable splint, not a hard cast, had been placed on Mr. Turner's leg.[4] On November 29, 2016, Dr. Rabalais also filed a motion for summary judgment, arguing that Appellants had failed to present expert testimony to support their medical malpractice claim.
On December 15, 2016, Appellants filed their own motion for summary judgment and argued the following: (1) Because Dr. Rabalais moved for summary judgment, Dr. Rabalais was required to produce expert testimony and had failed to do so; (2) their case fell within the exception set forth in Pfiffner v. Correa , 94-0924 (La. 10/17/94); 643 So.2d 1228, 1233, in which the Supreme Court of Louisiana stated that expert testimony is not required where the physician does an obviously careless act from which a lay person can infer negligence; (3) Dr. Rabalais had committed an obviously careless act and, as such, they were not required to submit expert testimony; (4) the theory of res ipsa loquitur applied; and (5) a material issue of fact existed as to whether a hard *255 cast or a removable splint had been placed on Mr. Turner's leg. Appellants also submitted affidavit testimony by Mr. Turner's daughter, son, and friend attesting that Mr. Turner's leg had been placed in a hard cast. Accordingly, Appellants argued that summary judgment in favor of Ochsner and/or Dr. Rabalais was improper.
On February 9, 2017, the trial court granted the motions for summary judgment filed by Dr. Rabalais and Ochsner and dismissed with prejudice all of Appellants' claims against Dr. Rabalais. The judgment also denied the motion for summary judgment filed by Appellants. This appeal followed.
ASSIGNMENTS OF ERROR
Appellants assign the following as error:
(1) The District Court erred in granting Dr. Rabalais' motion for summary judgment as sufficient evidence exists in the record-including Dr. Rabalais' own testimony-to show Dr. Rabalais failed to order appropriate x-rays and/or diagnostic films, and/or failed to correctly read the x-ray films, and that such negligence caused Dr. Rabalais' failure to diagnose/treat Mr. Turner's broken leg. At the very least, the evidence contained in the appellate records-including medical records, Dr. Rabalais' testimony, and plaintiffs' answers to interrogatories-undoubtedly create a genuine issue of material fact precluding summary judgment in favor of Dr. Rabalais.
(2) The District Court erred in granting Ochsner's motion for summary judgment as the plaintiffs have named experts who will provide expert testimony at the trial of this matter regarding Ochsner's medical malpractice. Moreover, a significant issue of material fact exists regarding whether Ochsner placed Mr. Turner in a hard cast or soft cast. This genuine issue of fact alone precludes summary judgment in favor of Ochsner. At the very least, the fact that Mr. Turner's leg was placed in a cast at Ochsner, and thereafter had to be amputated, invokes the doctrine of res ipsa loquitur, which precludes summary judgment in favor of Ochsner.
(3) The District Court erred in denying the motion for summary judgment filed by Richard and Flora Turner as Dr. Rabalais' own admissions prove he breached the standard of care owed to Mr. Turner in failing to order a CT scan, causing Dr. Rabalais to improperly diagnose the breaks in Mr. Turner's leg following his fall, and the admissible medical records of Ochsner undisputedly document that Mr. Turner suffered a broken leg when he fell.
STANDARD OF REVIEW
A summary judgment is reviewed on appeal de novo , with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Schultz v. Guoth , 2010-0343 (La. 1/19/11); 57 So.3d 1002, 1005-06.
DISCUSSION
Assignments of Error # 1 and # 2
In two related assignments of error, Appellants argue that summary judgment in favor of Dr. Rabalais and Ochsner was inappropriate on two grounds. First, Appellants *256 aver that sufficient evidence exists to demonstrate that Mr. Rabalais committed medical malpractice, such as to create a genuine issue of material fact precluding summary judgment in favor of Dr. Rabalais. Second, Appellants maintain that a significant issue of material fact exists regarding whether Ochsner placed Mr. Turner in a hard cast or soft cast, thus precluding summary judgment in favor of Ochsner. Appellants conclude that because of these alleged genuine issues of material fact, the trial court should not have rendered summary judgment in favor of Dr. Rabalais or Ochsner.
To establish a claim for medical malpractice, a plaintiff must prove the following by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. Schultz v. Guoth , 2010-0343 (La. 1/19/11); 57 So.3d 1002, 1006 (citing La. R.S. 9:2794). In motions for summary judgment in the context of medical malpractice, the burden of proof does not require that the medical care provider disprove medical malpractice, but only that the medical care provider raise as the basis of its motion that the plaintiffs cannot support their burden of proof at trial to demonstrate medical malpractice. See Samaha v. Rau , 2007-1726 (La. 2/26/08), 977 So.2d 880, 887. Once the medical care provider has made a prima facie showing that the motion should be granted, then the burden shifts to the plaintiffs to present evidence sufficient to establish that they will be able to meet their burden of proof at trial. See Samaha , 977 So.2d at 887-88.
It is well established that to meet the burden of proof in a medical malpractice action, the plaintiff is generally required to produce medical expert testimony as a matter of law. Fagan v. LeBlanc , 2004-2743 (La. App. 1 Cir. 2/10/06); 928 So.2d 571, 575. Notably, the jurisprudence recognizes limited exceptions to the requirement of expert testimony in those instances where the claim arises out of an "obviously careless act " from which a lay person can infer negligence. Pfiffner v. Correa , 94-0924 (La. 10/17/94); 643 So.2d 1228, 1233-34. (Emphasis added.)
Examples of obvious negligence that could be inferred by a lay person include "obviously careless act[s], such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body[.]" Pfiffner , 643 So.2d at 1233. Other examples of obvious negligence include the "[f]ailure to attend a patient when the circumstances demonstrate the serious consequences of this failure, and failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary[.]" Id. at 1234.
Accordingly, the primary question is whether the alleged negligence in this case constitutes obvious negligence, for which no expert testimony is required. The alleged negligence in this case is that Dr. Rabalais either failed to order appropriate x-rays or diagnostic films, or failed to correctly read the x-ray films, and that such negligence caused Dr. Rabalais' failure to properly diagnose and treat Mr. Turner's broken leg.
We find that Dr. Rabalais' acts do not constitute "obvious negligence" as discussed in Pfiffner v. Correa. First, Mr. Turner has a complicated medical history. His medical records from Ochsner indicate that Mr. Turner had a history of falling in the three months prior to his visit to Ochsner on July 29, 2012. These same records deem Mr. Turner to be a high fall risk. Additionally, Mr. Turner had previously *257 undergone knee replacement surgeries in both of his legs. Prior to the amputation, Mr. Turner had a history of foot drops and neuropathy, and wore support braces on both of his legs. Further, the facts surrounding the fall itself are complicated. Although it has been established that Mr. Turner fell on July 24, 2012, the correlation between the fall and Mr. Turner's eventual amputation are unclear. Accordingly, we find that expert medical testimony is necessary to establish (1) the standard of care applicable to the defendants; (2) whether the defendants breached that standard of care; and (3) whether there was a causal connection between the breach and the resulting injury.
Appellants have not identified specific experts to support their claims. On August 15, 2014, in regard to expert testimony, Appellants stated the following in an answer to an interrogatory seeking information about retained experts:
Plaintiff has not yet obtained copies of all medical records, and therefore cannot opine as to what experts it will utilize at trial. However, plaintiff, anticipates calling all subsequent treating physicians to testify as to causation, standard of care, and damages.
Appellants then referred back to a list of physicians that had treated Mr. Turner during the five year period immediately preceding the date of the fall at issue. The case management schedule noted that Appellants were required to identify experts by November 21, 2016, and that Appellants would be required to depose those experts within thirty days of that date. Despite this deadline, Appellants never supplemented the record with information regarding expert testimony. Because Appellants provided no expert witnesses to support their claims, they cannot prove the necessary elements of their medical malpractice suit. Accordingly, the trial court properly granted Dr. Rabalais' and Ochsner's motions for summary judgment and these assignments of error lack merit.
Assignment of Error # 3
In their third assignment of error, Appellants argue that the trial court erred in denying their motion for summary judgment because Dr. Rabalais' own admissions prove he breached the standard of care owed to Mr. Turner in failing to order a CT scan, causing Dr. Rabalais to improperly diagnose the breaks in Mr. Turner's leg following his fall.
This assignment of error is a misrepresentation of Dr. Rabalais' testimony. Appellants argue that in his deposition, Dr. Rabalais "testified that, in hindsight, he would've ordered a CT scan for Mr. Turner's right leg." Dr. Rabalais' actual testimony was:
If the patient's clinical picture indicated getting further imaging, we would have gotten [a CT scan ] ... [T]he clinical picture is a couple of things. One, is the patient having pain or not? Is it big and swollen? Does it look like a fracture? ... I was able to move the patient through a full range of motion without him having any pain.
According to the deposition testimony in the record, Dr. Rabalais stated that he would have ordered a CT scan for Mr. Turner's leg if he had believed it was necessary. This differs from Appellant's allegations that Dr. Rabalais' own admissions prove that he breached the standard of care.
Further, Appellants alleged that Ochsner's medical records undisputedly document that Mr. Turner suffered a broken leg when he fell. However, as previously stated, although it is clear that Mr. Turner fell, expert medical testimony is necessary to determine the correlation between the fall and Mr. Turner's amputation. Because *258 no expert medical testimony was provided, summary judgment in favor of Appellants would not have been proper. Therefore, this assignment of error is without merit.
DECREE
The judgment of the Nineteenth Judicial District Court granting the motions for summary judgment filed by Dr. Rabalais and Ochsner, denying the motion for summary judgment filed by Appellants, and dismissing, with prejudice, all claims against Robert David Rabalais, M.D. and Ochsner Medical Center is affirmed. All costs of this appeal are assessed to Appellants, Flora and Richard Turner.
AFFIRMED.
McClendon, J. concurs.

In May 2013, Appellants' medical malpractice claim against Dr. Rabalais and Ochsner was filed with the Louisiana Patient's Compensation Fund.

According to Appellants, Mr. Turner had previously undergone two knee replacement surgeries. Specifically, Appellants alleged that Mr. Turner had his left knee replaced 15 years prior to the incident in question, and his right knee replaced 22 years prior to the incident.

This was Appellant's fourth amended petition.

The medical records support Ochsner's claims. The records indicate that a synthetic and posterior long leg splint had been placed on the right leg, not a hard cast. Further, the deposition testimony of Dr. Christopher Ferguson also indicates that Mr. Turner's leg was placed in a long-leg splint, which is removable and "held on by an Ace wrap".