STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT



2022 CA 1249[1]

CONTI ENTERPRISES, INC.

VERSUS

PROVIDENCE/GSE ASSOCIATES, LLC., ROBERT E. WILLIAMS, JR.
AND ASPEN SPECIALTY INSURANCE COMANY

Judgment rendered: __OCT 3 0 2023__

* * * * *

On Appeal from the
32nd Judicial District Court
Terrebonne Parish
State of Louisiana
No. 174385

Judge Randall L. Bethancourt, Presiding

* * * * *

Stephen P. Hall
Phelps Dunbar, LLP
New Orleans, Louisiana

Adrian G. Nadeau
J. Weston Clark
Baton Rouge, Louisiana

Brian J. Marceaux
Julius P. Hebert, Jr.

Derick A. Bercegeay
Brianna Wilson Orgeron
Houma, Louisiana

Attorneys for Appellee/Defendant
XL Specialty Insurance Company

Attorneys for Appellees/Defendants
Hartman Engineering, Inc. and
Jared Monceaux

Attorneys for Plaintiff/Appellant
Terrebonne Parish Consolidated
Government

* * * * *

**BEFORE: THERIOT, HOLDRIDGE, AND HESTER, JJ.**

Hester, J. Concurs

---

[1] We note that 2022-CA-1249, **Conti Enterprises, Inc. vs. Providence/GSE Associates, LLC,** is consolidated with 2022-CA-1248, **Conti Enterprises, Inc. vs. Providence/GSE Associates, LLC,** for oral argument and submission.

**HOLDRIDGE, J.**

In this appeal, Terrebonne Parish Consolidated Government (TPCG) appeals a trial court's judgment granting a motion for summary judgment dismissing all of TPCG's claims against Hartman Engineering, Inc. and Jared Monceaux (sometimes collectively referred to as "Hartman"). We affirm.

## BACKGROUND

This lawsuit arises out of a road construction project in Terrebonne Parish commonly called the "Hollywood Road Widening Project" ("the Project"). On April 21, 2015, Conti Enterprises, Inc. (Conti), which served as the general contractor on the Project, filed a lawsuit against Providence/GSE Associates, LLC (Providence), Robert E. Williams, Jr., and Aspen Specialty Insurance Company, Providence's insurer. By amended petition filed on November 2, 2018, Conti added TPCG and the Louisiana Department of Transportation (DOTD) as defendants in the litigation.

In the original and amending petitions, Conti alleged that TPCG entered into a written contract with Providence to perform construction engineering and inspection services, including construction administration, in connection with the Project. Conti further alleged that it based its bid price on the ability to construct the Project in strict compliance with the plans, specifications, and bidding documents. Conti alleged that during construction, it became obvious that the plans, specifications, and bidding documents, including the portions designed, issued, and let for bid by TPCG and DOTD, were inadequate and insufficient for proper construction of the Project. Conti sought to recover all losses it claimed were caused by the wrongful acts of the defendants in connection with the design phase and construction administration of the Project, including all amounts for

2

additional time, effort, manpower, labor, equipment and money for which Conti had not been paid, as well as extended overhead and home office expenses.

On May 14, 2020, TPCG filed a reconventional demand, cross-claim, and third-party demand in which it made Hartman and its insurer, XL Specialty Insurance Company (XLSIC), third party defendants in the litigation.[2] In the third-party demand, TPCG alleged that Hartman contracted with TPCG on October 7, 1998, to prepare an environmental assessment and to prepare plans and specifications for the roadway, including storm drains, associated with the Project. TPCG alleged that the TPCG-Hartman contract required Hartman to defend and indemnify TPCG and to maintain insurance for the Project, listing TPCG as an additional insured. TPCG asserted that in the event it was found liable to Conti, Hartman and its insurers were obligated to indemnify TPCG for any and all damages cast against TPCG in the Conti lawsuit for all costs and expenses, including attorney's fees. More specifically, TPCG alleged that if Conti was able to prove its allegations regarding the site conditions or defective roadway plans, Hartman, through its contract with TPCG, was liable to TPCG for its negligence or fault based upon Hartman's numerous alleged breaches of the TPCG-Hartman contract, including: preparing plans and specifications which contained errors and omissions; deficient preparation of topological surveys, roadway plans, including drainage specifications, environmental assessments and Project designs; and Hartman's deficient implementation of its scope of work associated with the Project.

On January 6, 2022, Hartman filed a motion for summary judgment in which it asserted that TPCG's claims were barred by the five-year peremptive period set forth in La. R.S. 9:5607 for actions seeking damages against a professional

---

[2] By letter dated January 2, 2019, TPCG tendered the defense and indemnity of the claims made against it by Conti in the amended petition to XLSIC.

3

engineer. Hartman relied on La. R.S. 9:5607(A)(3), which provides that the peremptive period in a claim against an engineer that furnished services preparatory to construction, but did not perform inspection of the work, commences to run from the date the engineer has completed its services. According to Hartman, the services it was contracted by TPCG to perform in connection with the Project were completed when Hartman signed and sealed the last revision to its final set of roadway plans on September 16, 2013. Hartman urged that pursuant to La. R.S. 9:5607(A)(3), all claims against Hartman related to its services on the Project had to be brought no later than September 16, 2018. Since TPCG's third-party demand against Hartman was filed in May of 2020, nearly two years after the five-year peremption period had expired. Hartman argued that TPCG's claims were perempted as a matter of law and should be dismissed.

In opposition to the motion, TPCG insisted that the statutes pertaining to public works projects undertaken by DOTD provide the exclusive time limitation for all work arising out projects related to a DOTD contract. The provision relied on by TPCG, La. R.S. 48:251.3, provides that any action arising out or related to a DOTD contract or on a bond furnished by a contractor prescribes five years from recordation of the acceptance of such contract. According to TPCG, the DOTD prescription statutes applied to this case because the Project was let out by DOTD on TPCG's behalf, TPCG was required to follow the protocol set forth in the DOTD statutes, Hartman's work done on the Project undoubtedly arises out of and is related to the DOTD Project, and Hartman provided design services, inspection services, and other preparatory services outside of design engineering in connection with the Project. TPCG asserted that the five-year prescriptive period on such actions commenced on the date of acceptance of the work by DOTD was

4

recorded. TPCG relied on evidence showing that on June 15, 2017, DOTD's chief engineer, Janice Williams, signed and approved the final acceptance of the Project and recorded that acceptance with the clerk of court in Terrebonne Parish. On June 23, 2017, TPCG filed its final accepted completion of the Project. TPCG urged that pursuant to the DOTD statutes, the five-year prescriptive period began to run on June 23, 2017, making its 2020 claims against Hartman timely.

Alternatively, TPCG maintained that if La. R.S. 9:5607's peremptive period in actions against engineers provides the applicable time limitation in this case, subsection (A)(1) governs its claims against Hartman, which provides the same time period for claims against engineers as La. R.S. 48:251.3—five years from the recordation date. Thus, TPCG posited that as a matter of law, it had five years from the recordation of the acceptance of the Project by DOTD to file its lawsuit against Hartman, La. R.S. 9:5607(A)(3) did not apply in this case, and Hartman was not entitled to summary judgment dismissing TPCG's claim.

On January 6, 2022, XLSIC filed a separate motion for summary judgment, seeking dismissal of all claims against it as Hartman's insurer. XLSIC argued in its motion that there was nothing in either the TPCG-Hartman Contract or the XLSIC insurance policy at issue which rendered TPCG an insured under that policy. XLSIC further argued that TPCG's claims on its alleged status as an additional insured of XLSIC were preempted. Therefore, XLSIC urged the trial court to grant its motion for summary judgment.

By judgment dated June 28, 2022, the trial court granted Hartman's motion for summary judgment, and in a second judgment signed on that same date, the trial court granted XLSIC's motion for summary judgment. TPCG filed separate

motions appealing both judgments.[3] TPCG's appeal from the summary judgment rendered in favor of XLSIC was docketed as 2022-CA-1248, while the judgment granting Hartman's motion for summary judgment was docketed as 2022-CA-1249. In connection with both appeals, this court initially issued rules to show cause orders as to whether the appeals should be dismissed. Thereafter, this court maintained the appeals. **Conti Enterprises, Inc. v. Providence/GSE Associates, LLC**, 2022-1248 (La. App. 1 Cir. 4/17/23); **Conti Enterprises, Inc. v. Providence/GSE Associates, LLC**, 2022-1249 (La. App. 1 Cir. 4/17/23). The appeals were later consolidated for oral argument and submission by this court.

## SUMMARY JUDGMENT

After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(A)(3); **Turner v. Rabalais**, 2017-0741 (La. App. 1 Cir. 12/21/17), 240 So.3d 251, 255, writ denied, 2018-0123 (La. 3/9/18), 237 So.3d 1193.

A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. **Collins v. Franciscan Missionaries of Our Lady Health System, Inc.**, 2019-0577 (La. App. 1 Cir. 2/21/20), 298 So.3d 191, 194-95, writ denied,

---

[3] We note that this court remanded this matter to the trial court, on a joint motion of parties, to fix the decretal language in the judgment pursuant to La. C.C.P. art. 1918(A). The trial court signed an amended judgment on March 16, 2023.

2020-00480 (La. 6/22/20), 297 So.2d 773. A fact is "material" when its existence or non-existence may be essential to plaintiff's cause of action under the applicable theory of recovery. A material fact is one that would matter at a trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. **Collins**, 298 So.2d at 195.

The Code of Civil Procedure places the burden of proof on the party filing the motion for summary judgment. La. C.C.P. art. 966(D)(1). The mover can meet this burden by filing supporting documentary evidence, and the mover's supporting documents must prove the essential facts to carry the mover's burden. Thus, in deciding a motion for summary judgment, it must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material factual issues. **Jenkins v. Hernandez**, 2019-0874 (La. App. 1 Cir. 6/3/20), 305 So.3d 365, 370-71, writ denied, 2020-00835 (La. 10/20/20), 303 So.3d 315.

Once the mover demonstrates the absence of factual support for one or more elements essential to the adverse party's claim, the burden shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. **Jenkins**, 305 So.3d at 371. If the non-moving party fails to prove the existence of a genuine issue of material fact, La. C.C.P. art. 966(D)(1) mandates the granting of the motion for summary judgment. Id.

Applicable Time Period

Hartman asserts that the five-year peremptive period provided for in La. R.S. 9:5607(A)(3) applies to TPCG's claims. Louisiana Revised Statutes 9:5607 provides, in pertinent part, as follows:

7

A. No action for damages against any professional engineer ... whether based upon tort, or breach of contract, or otherwise arising out of an engagement to provide any manner of moveable or immovable planning, construction, design, or building, which may include but is not limited to consultation, planning, designs, drawings, specifications, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought unless filed in a court of competent jurisdiction and proper venue at the latest within five years from:

(1) The date of registry in the mortgage office of acceptance of the work by owner; or

(2) The date the owner has occupied or taken possession of the improvement, in whole or in part, if no such acceptance is recorded; or

(3) The date the person furnishing such services has completed the services with regard to actions against that person, if the person performing or furnishing the services, as described herein, does not render the services preparatory to construction, or if the person furnishes such services preparatory to construction but the person furnishing such services does not perform any inspection of the work.

****

C. The five-year period of limitation provided for in Subsection A of this Section is a peremptive period within the meaning of Civil Code Article 3458 and in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

Hartman contends that because it performed work only preparatory to construction and did not provide inspection of the work or any engineering services during the construction of the Project, under the plain language of La. R.S. 9:5607(A)(3), the five-year peremptive period began to run on the date it completed its services under its contract with TPCG. Thus, Hartman maintains, any claims TPCG may have had related to its engineering services were perempted five years after Hartman completed its services under the TPCG contract. This occurred when Hartman signed and sealed the last revision to its final set of roadway plans on September 16, 2013.

In support of the motion, Hartman submitted Mr. Monceaux's December 22, 2021 affidavit, together with numerous exhibits attached thereto; Conti's petition

8

for damages and amended petition; correspondence between TPCG's attorney and Hartman's attorney[4]; TPCG's cross claim and amended cross claims; and Hartman's discovery responses.

In his affidavit, Mr. Monceaux, an engineer and owner of Hartman Engineering, who was familiar with Hartman's scope of work on the Project, and who stamped and sealed Hartman's final plan revisions, made the following attestations: On October 7, 1998, Hartman entered into a "Contract for Engineering Services" with TPCG, whereby Hartman agreed to provide Environmental Assessment (EA) and related engineering services to TPCG for the Project. On June 5, 2001, Hartman and TPCG entered into a supplemental agreement to the contract wherein the parties agreed to modify the payment clause of the contract, that Hartman had satisfactorily completed the EA services, and that Hartman would prepare preliminary plans for the Project. On October 4, 2004, the contract was again supplemented to reflect the parties' agreement that Hartman would prepare revisions to plans developed and perform related survey services. The "public liability" provisions of the contract were replaced with "indemnity" and "errors and omissions" provisions.

Continuing, Mr. Monceaux attested that: On October 12, 2005, Hartman and TCPG entered into a third supplemental agreement to the contract, in which the parties agreed that Hartman's scope of work would be modified to include the preparation of a right-of-way map and final plans for the construction of the roadway for the Project and to replace the "public liability" provisions with new "indemnity" and "errors and omissions" provisions. On May 30, 2013, Hartman and TPCG entered into a fourth supplemental agreement to the contract in which

_____

[4] We note that the correspondence, which was not attached to an affidavit, is not competent summary judgment evidence. See La. C.C.P. art. 966(A)(4) and comment (c). Additionally, it is noted that the discovery attached to the motion for summary judgment was not answered under oath.

9

they agreed that Hartman would update the roadway plans previously prepared to current DOTD specifications, add driveways, revise quantities, and revise other associated items.

According to Mr. Monceaux, pursuant to the contract, as amended and supplemented, Hartman submitted its stamped and sealed set of final roadway plans for construction of the Project on July 15, 2013. Hartman submitted its final invoices to TPCG for payment on August 6th and 7th, 2013, which were paid in full by TPCG by check dated August 26, 2013. Thereafter, at the request of DOTD's engineer for the Project, Mr. Monceaux made limited revisions to the plans to address changes for the final bid set of documents, stamped the revised plan sheets on September 16, 2013, and issued them to DOTD. This was the last revision of the plans Hartman prepared under its contract with TPCG, and with this final revision, Hartman completed its services under its contract with TPCG as amended and supplemented.

After Hartman completed its work under TPCG contract, Mr. Monceaux responded to emails from DOTD's engineer and a contractor exchanged from September 2013 through February of 2014 relative to questions arising during the bidding process. However, Mr. Monceaux advised the DOTD engineer that answering contractor questions was not included within the contract as amended. Mr. Monceaux's request to be compensated for answering such questions was denied. Hartman responded to emails from DOTD and a contractor to direct attention for ease of reference to a special provision Hartman had included in its final plans and to provide native design files for the contractor's convenience. Hartman was not paid for these email communications as they were provided as a matter of courtesy.

10

Mr. Monceaux acknowledged that in 2014, he was retained by TPCG as an expert witness relative to an expropriation complaint by Henry Richard, who owned property along Hollywood Road. He stated his scope as an expert witness was merely to review documents and provide opinions and that neither he nor Hartman performed any design services in conjunction with the expert witness engagement.

Finally, Mr. Monceaux made the following attestations: The TPCG contract, as amended and supplemented, did not include an agreement for Hartman to provide any construction and engineering inspection services, construction administrative services, or any other construction phase services; Hartman submitted a proposal to TPCG to be one of the engineering firms considered for those services for the Project; however, Hartman's proposal was not accepted by TPCG; Hartman did not perform any construction phase services in connection with the Project and Hartman was not asked to and did not observe or inspect any work on the Project.

Additional evidence submitted by Hartman in support of its motion for summary judgment corroborating Mr. Monceaux's attestations included the TPCG-Hartman contract, executed on October 7, 1988, setting forth scope of Hartman's services to include: Preliminary Engineering, Right of Way Survey and Maps, and Final Plans. On December 9, 1998, TPCG issued a notice to proceed on the contract. On June 5, 2001, the contract was amended to provide to include all engineering services required for the completion of the preliminary plans and estimates for the Project and to set forth a schedule for the completion of Hartman's work. The contract was again amended on October 5, 2004, to include all engineering services required to revise the preliminary plans due to roadway changes since the original survey was acquired and to set forth deadlines for the

11

completion of these services. On October 12, 2005, another amendment was executed to include all necessary right of way map preparation and the development of final plans for the Project. The contract was further amended on May 30, 2013, to expand the scope of the services to include all engineering services to revise the construction plans, including bringing them up to current DOTD specifications and adding driveways.

The final plans were recommended and approved by Hartman and TPCG on July 15, 2013. DOTD approved the plans on August 9, 2013. On August 5, 2013, Hartman submitted an invoice to TPCG in the amount of $10,435.27 for services rendered from July 1, 2013 through July 31, 2013. On August 7, 2013, Hartman submitted an invoice to TPCS in the amount of $20,134.93 for services rendered from April 23, 2009 through July 31, 2013. On August 26, 2013, TPCG issued Hartman a check in the amount of $30,570.00.

Thereafter, the evidence shows that on September 25, 2013, DOTD's project engineer sent Hartman an email regarding a revision to estimated quantities. The engineer advised other than changing the date of the revision to September 30, 2013, the plan sheets were "good to go." DOTD's engineer stated that he would change the date and planned to readvertise the Project on October 2nd. Another email from DOTD's project engineer to Hartman on September 19, 2013, stated that DOTD had received a number of questions from contractors on the construction plans and specifications; he advised that the Project would have to be withdrawn from letting, and the next possible letting would be October 23, 2013, if the plans and specifications were complete by the close of business on September 30, 2013. Hartman responded on September 19, 2013, to inquire whether DOTD paid for addressing contractor questions during the bidding phase. Hartman sent an email later that day requesting that DOTD's engineer send him the applicable

12

contractor questions; DOTD's engineer responded that the main question was temporary asphalt, which Hartman addressed, and the remainder of the questions were regarding the utility plans. Email correspondence exchanged between Hartman and others in November of 2013 were also attached; in one of the emails, Hartman was asked for a contract expiration date for the Project, and the sender was instructed to "close it out" as they were "100 percent complete." In February of 2014, various emails were exchanged between Hartman and TPCG regarding a special provision drafted by Hartman, and a request for a release of the CAD drawing on the Project. Finally, in August of 2017, DOTD requested Hartman's design files to update its inventory files at it had just received final acceptance of the Project.

In further support of the motion, Hartman submitted its responses to TPCG's interrogatories, in which it asserted that it only provided professional engineering services in preparation for construction of the Project. Hartman denied providing any engineering services pursuant to any written contract with DOTD or Conti, denied providing any services whatsoever during the construction phase of the Project, and denied having ever been contracted relative to any problems during the construction phase of the Project. Hartman acknowledged that at request of DOTD, Hartman made limited revisions to plan sheets to address changes requested by DOTD's engineer, issued the revision to DOTD on September 16, 2013, and the September 16, 2013 revisions were the last revisions Hartman made to its plans under its contract with TPCG.

In opposition to the motion for summary judgment, TPCG insists that La. R.S. 9:5607(A)(3) does not apply to its claims against the Hartman. Instead, TPCG maintained that pursuant to La. R.S. 28:251.3 or La. R.S. 9:5607(A)(1), it

13

had five years from the date the final acceptance of the Project was filed and recorded on June 23, 2017.[5]

After Hartman's motion for summary judgment was filed, the deposition of Mr. Monceaux was taken in which he was thoroughly questioned on the statements made in his affidavit. His deposition was an exhibit to TPCG's opposition to Hartman's motion for summary judgment. The deposition testimony of Mr. Monceaux did not establish that the inspection or any other work was done by Hartman through January 2015.

Louisiana Revised Statutes 48:250 *et seq.*, set forth the laws specially governing DOTD contracts for public works and all contracts for the construction of public works let by DOTD on behalf of political subdivisions. The provision relied on by TPCG, La. R.S. 48:251.3, entitled, "Prescription; claims by contractors; surety," provides, in part:

> Any action arising out of or related to a department contract or on the bond furnished by a contractor shall prescribe five years from recordation of the acceptance of such contract or of notice of default of the contractor or other termination of the contract, whichever occurs first.

TPCG urged that this provision, which governs DOTD-related contracts, such as contracts for construction and engineering on public works projects, applies to its claims against Hartman. TPCG insisted that its evidence showed that the TPCG-Hartman contracts arose out of and were related to the DOTD contract, focusing on the following: DOTD bid and let out the contract for the Project; DOTD selected engineers, prepared the bid documents, selected the contractor; prepared all contracts for the Project, including the TPCG-Hartman contract, which contains a DOTD number; DOTD paid 80% of the cost for the Project; DOTD selected Hartman and Providence to perform engineering services, which then contracted

---

[5] DOTD's engineer signed the final acceptance of the Project on June 15, 2017; TPCG filed the final acceptance in the mortgage records on June 23, 2017.

14

with TPCG for those services. TPCG also claims that its evidence shows that Hartman's work was more than preparatory and involved inspection work through 2015. In support, TPCG relies on the fact that Mr. Monceaux testified on behalf of TPCG on January 28, 2015, in a lawsuit brought by a property owner seeking damages against TPCG. According to TPCG, this evidence proves that Hartman provided inspection services by its involvement in the design issues that arose during the construction of the Project through January 28, 2015, rendering La. R.S. 9:5607(A)(3) inapplicable.

We disagree. TPCG failed to show how Mr. Monceaux's retention by TPCG to testify in a lawsuit by a property owner on Hollywood Road equates to Hartman's providing inspection and other work on the Project through January of 2015. Mr. Monceaux was hired by TPCG to serve as an expert witness in a lawsuit by a property owner who resided on Hollywood Road. Mr. Monceaux attested that his services in connection with the lawsuit did not involve any design work. TPCG failed to introduce any contract for engineering services with Mr. Monceaux from 2015 and it has not supported its claim that Mr. Monceaux's testimony in a lawsuit related to the Project constitutes inspection of the work so as to bring its claims outside of the scope of La. R.S. 9:5607(A)(3).[6]

Furthermore, we find no merit in TPCG's argument that the DOTD statutes pertaining to public works projects override the specific peremptive period provided by La. R.S. 9:5607. It is a well-settled canon of statutory construction that the more specific statute controls over a general statute. **Sharp v. Sharp**, 939

---

[6] In an affidavit submitted by TPCG in support of its opposition to the motion, Al Levron, who was TPCG's parish manager who worked closely on, supervised, and was intimately involved with the Project, attested that "Hartman ... performed services outside the scope of design work for the Project," citing Hartman's environmental, survey, and title work for the Project; Hartman's handling of issues involving citizens disputes; and Hartman's exchange of information with contractors during the bidding phase of the Project. However, TPCG failed to show how any of these actions were unrelated to the engineering services Hartman was hired to perform on behalf of TPCG or occurred within the 5-year peremptive period set forth in La. R.S. 9:5706(A)(3).

15

So.2d 418, 421 (La. App. 1 Cir. 6/28/06), <u>writ denied</u>, 2006-1877 (La. 11/17/06), 842 So.2d 533. Louisiana Revised Statutes 9:5607 applies to all actions for damages against a professional engineer arising out of an engagement to provide design services related to any manner of moveable or immovable planning, construction, design, or building, including, but not limited to, consultation, planning, designs, drawings, specification, investigation, evaluation measuring, or administration. It contains three factual circumstances that trigger the running of the peremptive period: (1) the date of registry in the mortgage office of acceptance of the work by the owner; (2) the date the owner has occupied or taken possession of the improvement, if no such acceptance is recorded; and (3) the date the engineer rendering services has completed the services, if the engineer does not render services preparatory to construction or if the engineer furnishes services preparatory to construction but does not perform any inspection of the work. These factual triggers clearly contemplate that work performed by professional engineers in connection with public works projects fall within the scope of La. R.S. 9:5607.

We are mindful of the difference between prescription and peremption. Although related, the two are not the same and should not be confused; what is true of prescription may not be true of peremption. Peremption differs from prescription in two respects: (1) the expiration of the peremptive time period destroys the cause of action itself; and (2) nothing may interfere with the running of a peremptive time period. **Naghi v. Brener**, 2008-2527 (La. 6/26/09), 17 So.3d 919, 926. Statutes of limitation are exclusively a legislative prerogative. In setting the five-year peremptive period under La. R.S. 9:5607(A)(3) for claims against a professional engineer, the legislature determined that after five years, no cause of action can arise, regardless of the claim. <u>See</u> **Reeder v. North**, 97-0239 (La.

16

10/21/97), 701 So.2d 1291, 1296. Stated differently, after the five-year preemptive period expires as mandated by La. R.S. 9:5607, the cause of action no longer exists; it is lost. See **Regions Bank v. Eymard**, 2021-0926 (La. App. 1 Cir. 5/23/22), 342 So.3d 908, 919, writ denied, 2022-00977 (La. 10/18/22), 348 So.3d 731. Thus, we find that although the DOTD statute, La. R.S. 48:251.3, applies to this case, the more specific statute, La. R.S. 9:5607, is applicable and creates a preemptive period that TPCG had five years from September 16, 2013 to file an action for damages against Hartman. After September 16, 2018, the preemptive period had lapsed and any cause of action against Hartman for engineering services no longer existed. Therefore, La. R.S. 48:251.3 only applies if a cause of action against an engineering service exists. In this case, after September 16, 2018, no cause of action existed against Hartman or Mr. Monceaux.

Hartman offered evidence on the motion demonstrating that the services it performed on behalf of TPCG were preparatory to construction of the Project. Hartman was not contracted by TPCG to provide construction engineering and inspection services, construction administration services, or any other construction phase engineering services. Instead, another engineering firm was engaged by TPCG to perform the construction phase engineering and inspection services. Hartman's evidence showed that it did not inspect the work on the Project. The evidence offered by TPCG in opposition to the motion failed to create a genuine issue of fact as to whether Hartman provided services falling outside the purview of La. R.S. 9:5067(A)(3).

Accordingly, we hold that in this case, the five-year preemptive period began to run on the date Hartman completed the services it was contracted to provide to TPCG. Hartman showed that its services under the TPCG contract, as amended and revised, were completed when Hartman signed and sealed the last

17

revision of the final set of roadway plans on September 16, 2013. TPCG had until September 16, 2018 to file an action for damages against Hartman. Because TPCG's claim against Hartman was not filed until May of 2020, any action it may have had against Hartman arising out of the design services provided by Hartman was extinguished. The trial court correctly granted summary judgment dismissing TPCG's claims as those claims were perempted under La. R.S. 9:5607(A)(3).[7]

## CONCLUSION

For the foregoing reasons, the trial court's judgment granting summary judgment in favor of Hartman Engineering, Inc. and Jared Monceaux is affirmed. Costs of this appeal, docketed as 2022 CA 1249, in the amount of $23,728.50, are assessed to Terrebonne Parish Consolidated Government.

**AFFIRMED.**

---

[7] We reject TPCG's argument that its claims against Hartman should "relate back" to the date the original lawsuit was filed by Conti in April of 2015. There is nothing to relate back since the cause of action does not exist. See **Stewart v. Continental Cas. Co., Inc.**, 2011-0505 (La. App. 1 Cir. 11/9/11), 79 So.3d 1047, 1049, writ denied, 2011-2721 (La. 2/17/12), 82 So.3d 285. Under La. R.S. 9:5607(C), the five-year peremptive period may not be interrupted or suspended. Furthermore, La. C.C.P. art. 1041, which provides for a 90-day grace period for filing incidental demands, only applies if the incidental demand was filed within 90 days of the date of service of the main demand. TPCG did not file its claims against Hartman until 2020, long after the lawsuit was filed by Conti. TPCG was added to the suit by Conti on October 22, 2018, and TPCG was served with Conti's suit on November 8, 2018. Unfortunately, when TPCG was sued, its claim against Hartman and Mr. Monceaux was perempted and no longer existed.

18